# D. C. WISE COAL COMPANY, Respondent, v. COLUMBIA LEAD & ZINC COMPANY, Appellant.

## St. Louis Court of Appeals, March 5, 1907.

1. ATTACHMENT: Forthcoming Bond. Section 413, Revised Statutes of 1899, requires that a forthcoming bond given in an attachment suit shall be approved by the court, whereupon the court will make an order dissolving the attachment; where a forthcoming bond in such case was not approved by the court nor the attachment dissolved, a special execution was proper on the rendition of judgment in the cause sustaining the attachment.

2. BANKRUPTCY: Powers of Congress: Constitution. The authority to pass a uniform bankrupt law is conferred upon Congress by the Federal Constitution therefore the Bankrupt Act of 1898 and its interpretation by Federal courts of last resort are controlling upon all State courts.

3. ——: Attachment Liens: Notice Creditor. An adjudication in bankruptcy dissolved the lien of an attachment in a State court levied within four months from the time of filing the petition in bankruptcy; the attachment plaintiff was bound to take notice of the adjudication and that a judgment subsequently obtained by him sustaining the attachment and ordering a levy and sale of the attached property was without the jurisdiction of the State court and void.

4. JUDGMENTS: Setting Aside After Term: Jurisdiction. All judgments pass beyond the control of the court when the term at which they were rendered is ended, but every court has the power to vacate judgments or decrees rendered without jurisdiction of the person or the subject-matter either during the term at which such entries and judgments are made or after its expiration.

5. ——: ——: ——: ——: Procedure. A motion supported by affidavits is the proper procedure to bring to the attention of the court the want of jurisdiction in the rendition of a judgment so as to procure an order setting it aside.

6. ——: ——: Parties: Trustee in Bankruptcy. A trustee in bankruptcy is a proper party to a proceeding presented in a state court to set aside a judgment in attachment rendered without jurisdiction against the bankrupt of whose estate including the property attached the trustee has charge.

Appeal from Newton Circuit Court.—*Hon. Henry C. Pepper,* Judge.

REVERSED AND REMANDED (*with directions*).

*George Hubbert* for appellants.

(1) That the remedy sought by appellants may be obtained properly upon motion, sustained by the accompanying records and proceedings of the courts and affidavits of facts *aliunde,* would seem to be beyond question, and this may not be disputed in this court as it was in the court below, although plaintiff treated the motion as being essentially a petition, which plaintiff has formally answered accordingly, thereby expressly joining issue upon its allegations. So, there can be no valid objection to considering the merits of the several questions presented. Dial v. Farrow, 36 Am. Dec. 267; Neenan v. St. Joseph, 126 Mo. 93; Hirsh v. Weisberger, 44 Mo. App. 506; Downing v. Still, 43 Mo. 309; Ex parte Gray, 77 Mo. 160; Reed v. Nicholson, 93 Mo. App. 29; Adler v. State, 11 Cent. L. Jour. 487; Showles v. Freeman, 81 Mo. 543; Estes v. Nell, 163 Mo. 394; Heard v. Sack, 81 Mo. 616; 1 Black on Judgments, 321. (2) The vacation of a judgment may well be awarded on motion after the term of court at which it was entered, for fraud, for irregularity, for misconduct, for mistake, for surprise, or for excusable neglect or inadvertence. 17 A. & E. Enc. Law, 827-831; 1 Black on Judgments, sec. 303. (3) That the trustee in bankruptcy, Mowry, and the U. S. Fidelity & Guaranty Company, the alleged surety, are proper moving parties herein, because interested in the result, does not seem to us at all questionable, though disputed by the plaintiff below. (4) In all cases where a judgment will operate prejudicial to a stranger to the record, as surety or otherwise, it is competent for such stranger to come in and have it vacated for good cause. In re Flynn, 136 N. Y. 287; M'cWillie v. Martin, 25 Ark.

556; Lowber v. Mayor, 26 Barb. 262; McClurg v. Swartz, 87 Pa. St. 521; Aetna v. Aldrich & Mann, 38 Wis. 114; People v. Mullen, 65 Cal. 39. (5) The attachment, which was the only possible basis for the special judgment, and likewise for the order to produce the attached property, had been utterly dissolved and extinguished, as if it had never existed, by reason of the adjudication of defendant's bankruptcy; and, under the United States court's decisions; the invalidity of such attachment is open to attack, either direct or collateral; and, in consequence, all rights and remedies dependent thereon, including the property order on the 'supposed forthcoming bond, must likewise fall. Bankrupt Act 1898, sec. 67 (c), (f); In re Higgins, 97 Fed. 775; In re Kemp, 101 Fed. 689; St. Cyr. v. Diagnault, 103 Fed. 854; In re Kenney, 105 Fed. 897; In re Beals, 116 Fed. 530. (6) Although the levy of state attachment or replevin writ before the last four months, confers jurisdiction that may proceed to final disposition of the cause, and appropriation of the attached or replevined property, notwithstanding bankruptcy of the defendant, in the absence of some particular control assumed by the bankrupt court. Metcalf v. Barker, 187 U. S. 165, 47 L. Ed. 122; In re Snell, 125 Fed. 154; In re Beaver, 113 Fed. 889. (7) But at any rate the liability of the defendant, as obligor to the sheriff for the attached property, was extinguished by the dissolution of the attachment. Haywood v. George (Mass.), 13 Allen 66; Berry v. Flanders, 69 N. H. 626, 45 Atl. 591. And there be numerous cases to this effect where the dissolution came of bankruptcy or insolvency, whether the property went into the hands of the trustee or bankrupt, unless there is an order continuing the attachment for the benefit of the trustee. Mitchell v. Gooch, 60 Mo. 110; Wright v. Morley, 150 Mass. 573, 23 N. E. 252; Wright v. Dawson, 147 Mass. 385, 9 Am. St. 724; Lewis v. Webber, 116 Mass. 450; Shumway v. Carpenter (Mass.), 13

Allen 68; Whittridge v. Maxam, 68 N. H. 323, 44 Atl. 491; Polley v. Hazard, 70 Vt. 220; 40 Atl. 36.

*John T. Sturgis* and *H. S. Miller* for respondent.

(1)    The irregularity for which a judgment will be set aside on motion under the statute is one appearing on the face of the record and results from "The want of adherence to some prescribed rule or mode of proceeding." 1 Tidd's Practice, p. 512; Orvis v. Elliott, 65 Mo. App. 100. It is tried by an inspection of the record only. The motion *coram nobis* is in the nature of a writ of error grounded on facts outside the record "issued when the facts affected the validity and regularity of the judgment itself and to remedy such defect." Bishop v. Seal, 92 Mo. App. 171. (2) The fraud here spoken of as affording relief is "that fraud was practiced in the very act of procuring the judgment. The fraud in such cases must be actual fraud as contradistinguished from a judgment obtained on a false evidence or a forged instrument on the trial." Nichols v. Stephens, 123 Mo. 116; Bates v. Hamilton, 144 Mo. 11. Nor will the court grant relief on the ground of fraud, accident or mistake where a party failed to answer or make his defense because he or his attorney erroneously but honestly thought that judgment could or would not be rendered till some further notice was given, or a pending motion acted on, or till a later day or term. Fears v. Riley, 148 Mo. 60; Mathis v. Town of Cameron, 62 Mo. 507; Webster v. McMahan, 13 Mo. 582. (3) Judgments are properly taken and allowed by the courts pending or even after bankruptcy proceedings, not to be enforced *in personam* against the bankrupt, but to fix the liability and enforce payment against a surety or guarantor. Bankruptcy Act of 1898, sec. 16; Haber v. Klanberg, 3 Mo. App. 342; In re Paper Co., 102 Fed. 872; Hill v. Harding, 130 U. S. 702, 32 Law Ed., 1083; World Pub. Co. v. Grain Co., 108 Mo. App. 479; Boynton v. Ball, 121 U. S. 457; Jaequith v.

Rowley, 188 U. S. 620, 47 Law Ed. 620. And this will be done even when there is money or property of the bankrupt in the hands of the surety which will thus be lost to the estate; if the judgment taken is being enforced against the surety only. In re Franklin, 106 Fed. 666; In re Automobile Co., 119 Fed. 443.

BLAND, P. J.—On December 7, 1903, plaintiff commenced his suit against the Columbia Lead & Zinc Co., in the circuit court, by attachment, to recover a balance of $904.70, alleged to be due on account of coal sold and delivered to defendant. A writ of attachment was issued and delivered to the sheriff of Jasper county, by virtue of which that officer attached a lot of mining machinery, specifically described in the return indorsed on the back of the writ. Defendant was served with summons and at the return term of the writ filed its plea in abatement of the attachment and its answer to the merits, admitting it was a corporation, but denying all other allegations of the petition, and at the same time filed its application for a change of venue, which was granted, and the venue changed to the Newton Circuit Court. At the April term, 1904, of the Newton Circuit Court, a judgment by default, sustaining the attachment, and on the merits, was rendered in favor of plaintiff and against defendant, and a special execution awarded against all the property attached. On January 29, 1904, defendant, as principal, and the United States Fidelity & Guaranty Co., as surety, executed to plaintiff a forthcoming bond for the attached property, which bond was approved by the sheriff of Jasper county. An execution was issued on the judgment, commanding the sheriff to levy upon and sell the attached property. The sheriff returned this execution *nulla bona,* whereupon the court, on October 14, 1904, made an order requiring defendant to produce the attached property and deliver the same on or before October 24,

1904. It was further ordered that if defendant should fail to produce the property as directed, the sheriff of Jasper county should immediately assign the forthcoming bond to plaintiff. The attached property was not produced and the sheriff of Jasper county assigned the forthcoming bond to plaintiff, and afterwards, to-wit, on December 12, 1904, plaintiff filed its motion, in the Newton Circuit Court, for judgment on the forthcoming bond. On the same day defendant filed its motion to set aside the judgment and the orders made thereunder. On the seventeenth day of the same month, the motion was taken up and heard and by the court overruled, and leave given to continue the motion for judgment on the forthcoming bond to the next term. At the next (April, 1905) term the following motion (omitting caption) was filed:

"Now come the said defendant, and also B. D. Mowry as trustee in bankruptcy of and for the said defendant company, and also the United States Fidelity and Guaranty Company, all of whom appear for the purposes of this application only, and by way of amendment of their several and respective applications of like nature heretofore filed herein at the preceding term of this court, and respectfully show to the said court that the above-entitled cause was instituted, and the attachment of the defendant's personal property herein was had, on the seventh day of December, 1903, and defendant was summoned and answered therein.

"That on the twenty-fifth day of March, 1904, certain creditors of the defendant company, viz: First National Bank of Galva, Illinois; the First National Bank of Carterville, Missouri et al.; presented and filed in the District Court of the United States for the Southwestern Division Judicial District of the Western District of Missouri, as a Court of Bankruptcy, their concurrent petition for the adjudication of the said defendant as a bankrupt, under the statutes and acts of bankruptcy of

the United States, because of the existence of certain alleged grounds thereof, including the fact of defendant's insolvency.

"That thereon the said court did solemnly adjudicate the defendant company, on the twenty-eighth day of March, 1904, to be a bankrupt within the meaning and under the said statutes and acts, whereby said attachment was dissolved and made void; following which the said court did, on the thirteenth day of April, 1904, on petition of said bankrupt, order and enjoin, as against plaintiff, its attorneys and agents, with other alleged creditors, complete stay and cessation of all and whatever proceedings against the property and effects of defendant, including the property attached as aforesaid, and all manner of interference therewith by any action in the State courts, including the above-entitled case and this court.

"That the said court did, on the twenty-sixth day of April, 1904, duly appoint and qualify B. D. Mowry to be trustee in bankruptcy of and for the defendant company and its property and effects, including the said attached property, which property the said trustee did forthwith take possession and charge of as such trustee under the orders and control of the said Court of Bankruptcy; and the plaintiff and its attorney of record, H. S. Miller immediately and fully, were notified and advised of the said adjudication of bankruptcy and of the said restraining order of said court and expressed to defendant acquiescence therein.

"That, nevertheless, the plaintiff and its said attorney, fraudulently intending and contriving to circumvent the said bankrupt court, evade the bankrupt law and secure unfairly the equivalent of a preference over other creditors of the said bankrupt in respect of the said property, fraudulently and in violation of the said restraining order, did appear in this court on the twentieth day of April, 1904, without notice, summons or in-

timation thereof to defendant, to the trustee in bankruptcy or to other interested person, and moved the court to sustain the said attachment, enter irregular judgment against the defendant and the said property in the above-entitled cause, and then and there fraudulently refrained from disclosing to the court the aforesaid facts, and concealed from the court the said adjudication and restraining order, and procured the court, (by fraud and deceit, and by presenting to the court the said attachment and representing the same to be valid and live attachment against the said property upon which the plaintiff falsely represented and pretended that it was entitled to judgment, etc., when they knew better), to enter illegal but formal judgment sustaining the said attachment as valid and binding upon the said property and to adjudicate against the said property, *in rem,* a debt of said bankrupt to plaintiff in the sum of $909.82 and costs of the action, all in pursuance of the said void attachment, which said judgment is found at page 125 of book 30 of this court's record.

"That in continuation of the said fraudulent purpose and in execution of the said wrongful intent, the plaintiff and its said attorney did also have special execution issued against the said property on the said void judgment out of the office of the clerk of this court, on the fourteenth day of June, 1904, to the said sheriff of Jasper county, and did likewise also have and obtain from this court, on the fourteenth day of October, 1904, further void entry order of this court against the defendant company and bankrupt, requiring delivery of the said property to the said sheriff, which order was procured by plaintiff and its attorney upon application containing the unfounded and false assumption before and deceitful representation to the court at the time that the sheriff had taken and returned, although he had not, a forthcoming bond executed by said defendant company with the said United States Fidelity & Surety Company

as surety thereto, conditioned for the delivery of the said property as this court might order; which said order for delivery was procured to be made and entered, at page 321 of book 30 of the records of this court, solely by reason of said fraudulent and deceitful misrepresentation of plaintiff and its attorney as to the continuing force and validity of the said attachment and special judgment, by all which the court was deceived and misled into the belief of the truth thereof, and the said order was entered without notice, summons or warning to the defendant, or to the trustee in bankruptcy for said estate, or to said surety company, and without jurisdiction to do so upon the part of the court from whom the plaintiff concealed the truth fraudulently at the time.

"That in pursuance of the said fraudulent and deceitful design and purpose and in further execution thereof, and in pursuance of the said attachment and order of delivery, the plaintiff has presented and filed its application and motion herein on the twelfth day of December, 1904, by which it seeks a further judgment of this court upon the said alleged delivery bond against the said defendant and Surety Company and execution thereon for the amount of the said debt and costs; and that, unless denied such remedy and restrained by this court, the plaintiff will proceed and persist in availing itself of the said unlawful, irregular, unconscionable and inequitable entries of record herein, and enforce payment of the said void judgment and give efficiency to the said void attachment and achieve the fruits of the said void order of delivery, all as the plaintiff and its said attorney are threatening, attempting and about to do, whereby these proponents will suffer irreparable injury and wrong to their damage for which they have no adequate remedy other than such as may be awarded herein.

"That none of the proponents had any knowledge

123 App—17

of said judgment or order, or of any purpose to obtain the same in the latter part of November, 1904, but confidently depended and relied upon said promised compliance with the intent, spirit and terms of said restraining order on the part of plaintiff and its attorneys.

"Now, therefore, the defendant, the said trustee and Surety and Guaranty Company, concur in moving and praying the court, viz:

"That the order of October 14, 1904, be vacated, set aside and expunged from the record as irregular, illegal, fraudulent, unconscionable and void.

"That the judgment entry of April 22, 1904, against the said property be vacated, set aside and expunged from the record as void.

"The plaintiff, its agent and its attorneys, be enjoined from further proceeding in anywise to enforce the said order, judgment or attachment; and restrained from further pursuit of the said property, its proceeds or any supposed obligation therefor under the said attachment, and from moving against any of these parties on account of or under said attachment or any claim by reason thereof; and that these parties have all other and proper protection and relief to which the facts may entitle them in the premises."

Plaintiff filed the following answer to the motion:

"Comes now plaintiff and for answer to defendant's or proponent's motion or petition to set aside the judgment and order to produce property in above cause, and deny each and every allegation therein contained. Wherefore having fully answered, plaintiff prays to be discharged with cost."

The motion was overruled and the costs thereof adjudged against the movers. The appeal was taken from this judgment. In support of the motion, the movers showed by record entries, that on March 25, 1904, a petition by certain creditors of the Columbia Lead & Zinc Co., was filed in the United States District Court

at Springfield, Missouri, praying that said company be adjudged a bankrupt. The judge of said district court being absent, the petition was by the clerk referred to A. E. Spencer, referee in bankruptcy, for adjudication. Spencer, on March 28, 1904, adjudged the said company a bankrupt. On April thirteenth of the same year, the Columbia Lead & Zinc Co. presented a petition to the referee, wherein, after referring to the fact that it had been adjudged a bankrupt, it informed the referee that various suits were pending against it in the state courts, including plaintiff's suit by attachment, and asked that further proceedings in said state courts be stayed. The referee made the following order on said petition:

"Application having been made asking for a stay of proceedings, in suits pending in various courts of the State of Missouri, in which said suits Weeks and Betts, Waters-Pierce Oil Company, Weeks Hardware Company, L. Pitman, John L. Perry, J. George Leyer Engineering Works Company, Halyard Hardware Company, J. H. Ven Hoose, Black and McAboy, Cook and Hirons, D. C. Wise Coal Company and Forcite Powder Company, respectively appear as plaintiffs, and the Columbia Zinc and Lead Company as defendant, and it appearing that a sale of the assets of the said Columbia Zinc and Lead Company, bankrupt herein, is already advertised and that a consummation of said sale and continued litigation in various State Courts will subject the estate of the bankrupt to loss and irreparable injury;

"Now, on motion of Charles W. Espey, attorney for the bankrupt herein, and no adverse party being heard, it is ordered: That said Weeks and Betts, Waters-Pierce Oil Company, Weeks Hardware Company, L. Pitman, John L. Perry, J. George Leyner Engineering Works Company, Halyard Hardware Company, J. H. Van Hoose, Black and McAboy, Cook and Hirons, D. C. Wise Coal Company and Forcite Powder Company, plaintiffs in said suits and their attorneys, agents and

servants, and all other persons whatsoever be and they are and each of them is stayed and enjoined from further proceedings with said, or any other sales of the assets of the bankrupt, or in any manner whatsoever interfering with the property of the bankrupt's estate, until twelve months from the date of the adjudication herein, or if within that time the said bankrupt shall apply for a discharge, then until the question of such discharge shall be determined.

"Let service of this order on the said plaintiffs, by a copy of the same delivered to them personally, or to the attorney of record in said suits, be sufficient."

On the twenty-second day of April, 1904, B. D. Mowry was appointed trustee of the bankrupt's estate. Mowry testified he took charge of the estate of the bankrupt, including the attached property, under the order of the referee, and no one but himself thereafter exercised any ownership or control over the property. On June 7, Mowry petitioned the referee for an order to sell the property of the bankrupt, and on the same day the referee made an order of sale which was duly executed by Mowry, on July 5, 1904. In Mowry's return to the order of sale, it is shown that he realized the sum of $2,235 from the sale of the property. Mowry testified he did not know, and was not informed, that plaintiff intended to prosecute its suit in the Newton Circuit Court after the adjudication in bankruptcy, and did not know that any proceedings had been taken in the case in that court until in the fall of 1904.

H. S. Miller was the attorney of record for plaintiff in the attachment case; and J. D. McAntire was the attorney of record for defendant, the Columbia Lead & Zinc Co.

Walter Herdien, in his affidavit read in evidence, swore that he was the superintendent of the Columbia Lead & Zinc Co., and had personal knowledge that notice of the order of the referee in bankruptcy, purporting to

prohibit any interference with the property of the bankrupt, was served upon H. S. Miller, plaintiff's attorney, and that such service was forthwith after the order was made and before April 20, 1904; that he and the company confidently relied upon the observance of the order and that Miller would faithfully observe the same; that as he understood, Miller fully acquiesced in the order when served with a copy, and for these reasons he nor the company attended the Newton Circuit Court to prevent a violation of the order.

Chas. W. Espey, who was attorney for the Columbia Lead & Zinc Company, in the bankruptcy proceedings, testified by affidavit that Miller was served with a copy of the order of the referee, restraining interference with the property of the bankrupt. Miller testified on the hearing but did not deny that he was served with a copy of the restraining order, prior to the taking of the judgment in the Newton Circuit Court.

J. W. McAntire testified by affidavit as follows:

"That after said cause was sent to the Newton County Circuit Court, the defendant company was adjudged bankrupt and notice given thereof and of the order of the referee in bankruptcy against interference with the property of the bankrupt, after which no further action was taken in the attachment suit with the knowledge of this affiant. And this affiant says that he signed and drew all the papers on the original file in said cause and that it was his habit to follow up the cases he began. That as soon as knowledge and information came to him of the fact that the defendant was adjudged a bankrupt, he believed that the order of the referee in bankruptcy would be observed and he paid no further attention to said cause. That he had no intimation of the intention upon the part of the plaintiff to prosecute its attachment or move for judgment until after the said judgment is said to have been entered, and did not know or hear of a notice of a motion for judgment upon alleged delivery

bond in the case until he was notified by W. L. Herdien, long after the date of said judgment."

Miller testified that McAntire was present on the day and at the time the judgment was rendered by the Newton Circuit Court, and voluntarily called him aside and told him that he (McAntire) was only employed to represent the defendant in the Jasper Circuit Court and when the change of venue was taken his services ceased as attorney for defendant, the Columbia Lead & Zinc Co. On cross-examination, Miller stated he made no representations to the court in respect to any of the proceedings in bankruptcy; that he simply appeared on the day the case was set for trial, proved up his claim and took the judgment; that no one appeared for defendant.

The forthcoming bond was given to the sheriff of Jasper county, was approved by him and by him filed in the Jasper Circuit Court, subsequent to the time the case was sent to the Newton Circuit Court by change of venue. The bond was never filed in the Newton Circuit Court. Plaintiff's attorney got possession of it from the clerk of the Jasper Circuit Court at the time the sheriff assigned it to plaintiff, and offered the bond in evidence. The movants objected to the bond as evidence, on the ground that it had never been filed in the Newton Circuit Court. The objection was overruled and the bond read in evidence.

1. In re Beals, 116 Fed. 530, it was held: "Under Bankr. Act 1898, section 67f an adjudication in bankruptcy, whether in voluntary or involuntary proceedings, renders void a judgment against a garnishee rendered in an action brought against the bankrupt within four months prior to the filing of the petition and when he was insolvent, and discharges the garnishee from liability thereon, and such judgment must thereafter be treated as a nullity whenever drawn in question, whether directly or collaterally."

In re Goldberg, 121 Fed. 1. c. 581, the court said:

"It is not necessary to cite the numerous cases holding that a subsequent adjudication in bankruptcy anuls all attachment levies obtained within the four months prior to the filing of the petition," citing many decisions of the Federal courts. On the same page it is said: "In effect, the filing of the petition in bankruptcy, followed by adjudication, which related back to the date of such filing, gave notice of the pendency of the proceeding to the sheriff, the plaintiffs, and their attorney, and to this purchaser, and attached this property in question for the benefit of all the creditors of the bankrupt, and enjoined the sheriff, his deputies, the plaintiffs and their attorney, and all the world, from further proceeding in the state court in the attachment suits. Whoever proceeded thereunder thereafter did so at his peril."

In Mueller v. Nugent, 184 U. S. 1. c. 14, it is said that the filing of the petition (in bankruptcy) is a *caveat* to all the world, "and in effect an attachment and injunction, . . . and on adjudication, title to the bankrupt's property became vested in the trustee, . . . with actual or constructive possession, and placed in the custody of the bankruptcy court."

In Mishawka Mfg. Co. v. Powell, 98 Mo. App. 1. c. 538, 72 S. W. 723, it is said: "The moment that an adjudication in bankruptcy has been made, the title to all the property of the bankrupt as of that date passes to the person who is subsequently chosen trustee." Many decisions of a like tenor might be cited from the Federal courts and from the courts of other States.

Defendant appeared and pleaded to the action while the cause was pending in the Jasper Circuit Court. After the cause was sent to the Newton Circuit Court on change of venue, defendant, with the United States Fidelity & Guaranty Co., executed to plaintiff a forthcoming bond and delivered it to the sheriff of Jasper county who approved it. This bond was never presented to or approved by either the Jasper or Newton Circuit

Court, therefore, the attachment was not dissolved by the execution of the forthcoming bond. [Section 413, R. S. 1899.] This statute requires the forthcoming bond to be approved by the court where the attachment suit is pending, and contemplates the court, on the approval of the bond, will make an order dissolving the attachment, and an order on the sheriff to release the attached property to the defendant. A special execution was therefore proper, unless the adjudication in bankruptcy operated to dissolve or annul the attachment. Section 67f, Bankrupt Act, 1898, provides that all levies, judgments, attachments or other liens, obtained through legal proceedings, against a person who is insolvent, at any time within four months prior to the filing of the petition in bankruptcy, shall be null and void in case he be adjudged a bankrupt. This statute is plain and unambiguous and has been construed in many cases to mean what it says; and money in the hands of a sheriff, realized from the sale of property on an execution, has been taken from the sheriff and put into the hands of the trustee in bankruptcy, where the defendant in the execution was adjudged a bankrupt within four months from the date of issuance of the execution. [In re Kenney, 105 Fed. 897.] The authority to pass a uniform bankruptcy law is conferred upon the Congress of the United States by the Federal Constitution, therefore, the bankrupt act and its interpretation by the Federal courts of last resort are controlling upon all the state courts. Under the act and following the Federal decisions construing it, we hold that plaintiff and its attorney (Miller) were bound to take notice of the adjudication in bankruptcy, and that the judgment of the Newton Circuit Court rendered subsequent to the adjudication, in so far as it sustains the attachment and orders a levy and sale of the attached property, was beyond the jurisdiction of the Newton Circuit Court, and therefore utterly void; and that all subsequent orders made and proceedings had for the

purpose of carrying forward or enforcing so much of the judgment as we hold to be void were without warrant of law.

2. Much is said in the briefs in respect to the liability or non-liability of the United States Fidelity & Guaranty Co., as surety on the forthcoming bond. Its liability or non-liability is not before us for discussion or decision. The question of liability of a surety on the appeal bond of one who is subsequently adjudicated a bankrupt was discussed by GOODE, J., writing the opinion for this court, in World Publishing Co. v. Rialto Grain Co., 108 Mo. App. 479, 83 S. W. 781. The situation of a surety on an appeal bond, where the judgment appealed from is affirmed, and of a surety on a forthcoming bond in an attachment suit, where the attachment is annulled by an adjudication in bankruptcy, are very different. A voluntary or involuntary adjudication of bankruptcy, as a general proposition, does not have the effect to release the surety of the bankrupt of his obligation as surety. Whether it has that effect in this particular case is not for us to decide.

3. The judgment recites that defendant made default. If the service of notice of the suit had been by publication and no appearance of defendant had been entered, the action being by attachment, the defendant, by the provisions of the statute (sec. 425, R. S. 1899) would have two years in which to file a motion to set aside the judgment. But the judgment roll shows that defendant was not only personally served with summons, but that it appeared to the action, filed its answer and took a change of venue. The recital in the judgment, therefore, that defendant made default, is erroneous, and the judgment in fact was by *nil dicit,* and the motion, having been filed after the term at which the judgment was rendered, came too late to reach any mere irregularity in the judgment or in any of the proceedings by which it was obtained. The rule of the common law

and the procedure in this State is, that after the term has ended, all final judgments and decrees of the court pass beyond its control, unless steps be taken during the term, by motion or otherwise, to set aside, modify or correct them. On the other hand, as Black states it, "every court possesses inherent power to vacate entries in its record of judgments, decrees, or orders rendered or made without jurisdiction, either during the term at which the entries are made or after its expiration. This rule applies not only where there is a want of jurisdiction over the parties, but also where jurisdiction over the subject-matter is lacking." [1 Black on Judgments, sec. 307.] This learned author at section 303, says: "The method of procuring the vacation of judgments which is by far the most commonly used, at the present day, is the proceeding by application to the court which rendered the judgment, in the form of a motion, with notice to the adverse party."

In Ex Parte Gray, 77 Mo. l. c. 162, it is said: "The usual way of bringing such matters before the court, according to the practice in this State, is by motion supported by affidavits or evidence," citing Latshaw v. McNees, 50 Mo. 381, and three other Missouri cases in support. This language of the court is approvingly quoted in Neenan v. City of St. Joseph, 126 Mo. l. c. 93, 28 S. W. 963, and is reiterated and approved in Estes v. Nell, 163 Mo. l. c. 394, 63 S. W. 724. Counsel discusses at some length the name and character that should be given the motion, or whether it should not be treated as a petition. It is not a petition, but a motion and it is immaterial what technical name be given it. It is clearly authorized under the foregoing authorities, and we think was a proper mode of procedure, and that the evidence produced in its support was according to approved methods.

4. It is insisted by plaintiff that Mowry the trustee in bankruptcy, was an unnecessary party to the mo-

tion. We think differently. As trustee he had the proceeds of the identical property against which the Newton Circuit Court had awarded a special execution under an asserted lien on the property, prior in date to the title of the trustee in the property. In these circumstances, it seems to us he had a right to appear and ask that the judgment, purporting to perfect this prior lien and to enforce the same, be set aside for the purpose of protecting the fund in his hands as trustee in bankruptcy.

5. Plaintiff states in its petition that they offered to let the judgment be set aside and take simply a personal judgment *nunc pro tunc* against the Columbia Lead & Zinc Co., and that the entries on the judge's docket were such as to authorize such a *nunc pro tunc* judgment, but the court refused to permit this to be done, and it now renews the offer in this court. We have failed to find in the abstracts that plaintiff made the offer in the circuit court; nor have we succeeded in finding any abstract of the entry made by the judge on his docket at the time he rendered the judgment. For the reasons herein stated, the judgment is reversed and the cause remanded, with directions to the circuit court to set aside its order overruling the motion, and to sustain the motion and set aside the judgment and all orders emanating therefrom, and to enter a general judgment for plaintiff. All concur.