# MARYLAND CASUALTY COMPANY

## *vs.*

## HARRY C. JONES.

*Bankruptcy—Provable Claim—Indemnity Bond.*

A claim on an indemnity bond given to protect the obligee on account of a contract of suretyship, was provable in bankruptcy proceedings against the obligor in such bond, though the obligee made no payments on acount of his contract of suretyship until after the declaration of bankruptcy; and consequently the obligor's discharge in the bankruptcy proceedings was a defense to a subsequent suit on the indemnity bond.

*Decided January 25th, 1922.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

Action by the Maryland Casualty Company against Harry C. Jones, formerly trading as H. C. Jones & Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*Walter L. Clark,* with whom were *Charles T. Reifsnider* and *Soper, Bowie* and *Clark* on the brief, for the appellant.

*Edward M. Hammond,* with whom were *N. Rufus Gill & Sons* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The substantial questions, arising upon the record in this case, are presented by the rulings of the court upon the conclusion of the testimony on the part of both the plaintiff and defendant, in the refusal and rejection of the plaintiff's six prayers, and in the granting of the defendant's fifth prayer, which in effect withdrew the case from the consideration of the jury, and directed a verdict for the defendant.

The cause of action is set out in the record, and the claim is stated to be an obligation incurred by reason of the execution of a bond by the appellant, in the penalty of four thousand dollars, to secure the release of libel of grain, under a charter party, in the case of A. W. Robinson, master steamship "Woodbridge," libellant, and the defendant, Harry C. Jones, trading as H. C. Jones and Company, the respondent, and claimant of the 154,596 bushels, 20 lbs., of wheat and 62,011 bushels, 2 lbs., of barley, the cargo libelled. The record shows that, in consideration of the plaintiff executing the bond or stipulation applied for, to release the cargo for shipment from the accrued demurrage charges, the defendant entered into a written indemnity agreement with, and delivered the same to, the plaintiff, "to re-imburse the plaintiff company for any and all loss, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature, which the company shall or may, for any cause, at any time, sustain or incur, or be put to, for, or by reason or in consequence of the company's having entered into or executed the bond."

The bond and stipulation to release the cargo was executed and filed in the case on the 18th of May, 1916, and thereafter the cargo of grain was released to the claimant by the libellant.

Subsequently, on February 12th, 1917, by a decree of the United States District Court for the District of Maryland, the claimant respondent and the plaintiff herein, as stipulator (the Maryland Casualty Company), were directed to pay to the libellants, or their proctors, the sum of three thousand one hundred and one dollars and fifty-eight cents, with interest from the date of the decree.

On the 13th of February, 1917, the plaintiff company paid the sums of money directed to be paid the libellants by the decree in the admiralty case, and had the decree entered to its use. And on the 5th of May, 1920, this suit was brought by the plaintiff against the defendant to recover

the amount paid by it, under the indemnity agreement set out in the stipulation bond, and also by virtue of the decree dated the 12th day of February, 1917, passed by the United States District Court for the District of Maryland, in admiralty, directing the amount to be paid.

The defendant filed five pleas in answer to the plaintiff's declaration. The first and second were the usual general issue pleas of *non assumpsit;* the third, adjudication in bankruptcy, to wit, that on the 11th day of September, 1916, he filed a voluntary petition in the U. S. District Court for the District of Maryland, in bankruptcy, and on the same day was duly adjudicated a bankrupt, and of which bankruptcy proceedings the plaintiff had actual notice. Thereafter, on the 18th day of November, 1916, the defendant was, by an order of the District Court of the United States for the District of Maryland, discharged from all debts and claims which existed on the 11th day of September, 1916, and that the debt which constituted the cause of action in this case was among the debts from which he was so discharged. And for a fourth plea, that the alleged cause of action did not accrue within three years before this suit. And for a fifth plea that, after the alleged claim accrued and before suit, the defendant was released therefrom by orders of the court, in bankruptcy, and in admiralty, dated the 9th day of October, 1916, and the 14th day of October, 1916.

The plaintiff joined issue on the first and second pleas, demurred to the third and fifth, and filed a general traverse and replications to the fourth plea, averring that the cause of action did accrue within three years before the suit, and that the defendant's military service tolled and barred the statute, and that the bringing of the suit was within the limitation period, as modified by the federal statute.

The court below, it will be seen, overruled the demurrer to the third plea, but sustained it as to the fifth plea.

The plaintiff thereupon replied to the defendant's third plea, as follows: "That the defendant was not by an order

of the District Court of the United States for the District
of Maryland, in bankruptcy, dated the 18th day of Novem-
ber, 1916, discharged from the cause of action set forth in
the plaintiff's declaration.   That said cause of action was
not provable against the said Harry C. Jones, trading as
H. C. Jones & Company, in bankruptcy, on the 11th day of
September, 1916, on which day the petition for adjudication
was filed by him, trading as H. C. Jones & Company.   And
that the debt which constitutes the plaintiff's cause of action
was not among the debts from which the defendant was dis-
charged in bankruptcy."

As the principal question in the case, as to whether the
order of discharge in bankruptcy of the defendant by the
United States District Court was a release and an acquittal
of the claim of the plaintiff, is presented both by the plain-
tiff's demurrer to the defendant's third plea and by the grant-
ing of the defendant's fifth prayer, the rulings of the court
in these respects will be considered together.

By the defendant's fifth prayer, the court held, and in-
structed the jury, that the cause of action filed in the suit
by the plaintiff was a debt actually existing on September
11th, 1916, the date of the adjudication of the bankrupt,
and was included among the debts from which the defendant
was relieved by the order of discharge granted by the Uni-
ted States District Court for the District of Maryland, in
bankruptcy, on November 18th, 1916, and that therefore
their verdict must be for the defendant.

The facts of the case and those upon which the decision
must turn, apart from those we have stated, are set out in
the record, and are shown by the record papers themselves,
to be these:   The voluntary petition of the defendant in
bankruptcy was filed on the 11th day of September, 1916;
the order adjudicating Harry C. Jones, trading as H. C.
Jones & Company, a bankrupt, was signed the same day; the
order discharging the defendant company in bankruptcy
was passed on the 18th day of November, 1916; the first
account was filed in the case on the 23rd of November, 1916;

the second account was filed on the 30th of April, 1917, and the final order on the third account was filed on the 8th day of June, 1918. A certified copy of the docket entries, in the libel case, show that the libel suit was filed on the 18th of May, 1916, and the stipulation, with the indemnity agreement, was filed on the same day. October 14th, 1916, order of court was passed substituting John Gildea, trustee in bankruptcy of H. C. Jones & Company, as party claimant in the libel suit. On December 9th, 1916, proof of plaintiff's claim, the cause of action in this case, was filed by the plaintiff company with Myers, the referee in bankruptcy, and on February 13, 1917, the decree of the U. S. District Court was entered to the use of the plaintiff company. On April 25, 1917, the proof of claim of the plaintiff, which had been filed in the bankruptcy proceedings, was withdrawn and marked "withdrawn" by the referee.

The facts thus stated and the law applicable to this kind of case, we think, support the conclusion and ruling of the court below that the discharge in bankruptcy, pleaded by the defendant, was a good defense to the plaintiff's claim and demand, under the bankrupt law now in force, and the court committed no error in so holding.

Under section 17 of chapter 541 of the U. S. Rev. Stat., approved July 1, 1898, and the subsequent amendments thereto, establishing a uniform system of bankruptcy throughout the United States, it is provided that a discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as are excepted by the act. Section 63 provides that debts of the bankrupt may be proved and allowed against his estate which are * * * (4) founded upon an open account or upon a contract express or implied; * * * . Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate. Section 1 (11) " 'Debt' shall include any debt, demand, or claim, provable in bankruptcy." Section 57-1: "Whenever a creditor whose claim against a

bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor." General Order, 21-4: "The claims of persons contingently liable for the bankrupt may be proved in the name of the creditor when known by the party contingently liable." Section 16: "The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt."

Mr. Remington, in his work on *Bankruptcy,* vol. 1, sec. 645, page 510, thus states the rule, as supported by authority, that where the surety pays his principal's debt after the principal has been adjudged bankrupt, the surety holds a claim for indemnity that had its origin before the bankruptcy and is therefore a provable and dischargeable debt. The rule, he states, has for its basis the peculiar provisions of the bankruptcy act, permitting proof of claims in the name of the creditor by sureties and others secondarily liable therefor even before payment by the sureties, where the creditor fails or refuses to make the proof himself.

*Loveland on Bankruptcy.* sec. 290, page 598, thus states the rule as to the rights of creditors to prove debts and share in the distribution of the estate of the bankrupt: "If, at the time of filing the petition, the liability of the bankrupt is fixed so that, upon the happening of a contingency, the amount can be ascertained by computation, it is a provable claim, if that contingency happens in time to prove the claim under section 57N. Such claims may be liquidated, if necessary, under sec. 63B." *Kilpatrick* v. *U. S. Fidelity & Guaranty Co.,* 228 Fed. 587; *Clifford* v. *Oak Valley Mills Co.,* 229 Fed. 851; *In re Mertens & Co.,* 147 Fed. 177; *Davis* v. *Findley,* 201 Ala. 515; *Morrison* v. *Vaughn,* 119 App Div. 184, 104 N. Y. Supp. 169-902; *Remington, Bankruptcy,* 508, 510 and 511.

But apart from the determination of the question here presented by the authorities cited above, the Supreme Court of the United States, in the case of *Williams* v. *United States Fidelity & Guaranty Co.,* 236 U. S. 549, passed upon practically the same question, reversing the Court of Appeals of Georgia (11 Ga. App. 635) and held that, to sustain the contentions of the appellant, in this case, "would effectually defeat a fundamental purpose of bankrupt law."

MR. JUSTICE McREYNOLDS, in delivering the opinion of the Court, said in part: "It would be contrary to the basal spirit of the bankrupt law to permit a surety, by simply postponing compliance with his own promise in respect of a liability until after bankruptcy, to preserve a right of recovery over against his principal notwithstanding the discharge would have extinguished this if the surety had promptly performed as he agreed. Such an interpretation would effectually defeat a fundamental purpose of the enactment. The written indemnity agreement embodied in the bankrupt's application to the surety company for execution of the bond, so far as its terms are important here, but expressed what otherwise would have been implied from the relationship assumed by the parties. At the time of the bankruptcy the obligation under this agreement was ancillary to a liability arising out of a contract estimation of which was easy of establishment by proof. There was no uncertainty which could prevent the surety from obtaining all benefits to which it was justly entitled from the bankrupt estate."

It was further said, in dealing with the question: "If the doctrine announced by the court below and maintained here by counsel is correct, a discharge in bankruptcy may have very small value for the luckless debtor who has faithfully tried to secure his creditors against loss; and, in effect, a demand against him may be kept alive indefinitely according to the interest or caprice of his surety. It is the purpose of the Bankrupt Act to convert the assets of the bankrupt into cash for distribution among creditors and then to relieve the honest debtor from the weight of oppressive in-

debtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes. * * * And nothing is better settled than that statutes should be sensibly construed, with a view to effectuating the legislative intent." Within the intendment of the law, provable debts include all liabilities of the bankrupt founded on contract, express or implied, which at the time of the bankruptcy were fixed in amount or susceptible of liquidation. * * * It provides complete protection and an ample remedy in behalf of the surety upon any such obligation. He may pay it off and be subrogated to the rights of the creditor; if the creditor fails to present the claim for allowance against the estate, he may prove it; and in any event, he has abundant power by resort to the court or otherwise to require application of its full *pro rata* part of the bankrupt's estate to the principal debt. To the extent of such distribution, the obligation of the bankrupt to the surety will be satisfied. Although, unlike the Act of 1867, the present one contains no express provision permitting proof of contingent claims, it does in substance afford the surety on a liability susceptible of liquidation the same relief possible under the earlier act, *i. e.,* application to the principal debt of all dividends declared out of the estate (Act of March 2, 1867, paragraphs 19, 27, c. 176, 14 Stat. 517, 525, 529). And as the surety thus either shares or enjoys an opportunity to share in the principal's estate, we think the discharge of the latter acquits the obligation between them incident to the relationship."

There were other contentions urged in the appellant's brief, and presented at the hearing, but what we have said disposes of the primary proposition in the case, and as we find no error in the rulings of the court the judgment must be affirmed.

*Judgment affirmed, with costs.*