JOHNSTON *v.* MISSOURI PACIFIC RAILROAD COMPANY,
THOMPSON, TRUSTEE.

4-6679                                      160 S. W. 2d 39

Opinion delivered March 16, 1942.

*Hardin & Barton,* for appellant.

*Thos. B. Pryor* and *Thos. B. Pryor, Jr.,* for appellee.

GRIFFIN SMITH, C. J.   Two questions are presented: (1) Is the bond of a corporation engaged in manufacturing wood products void for want of consideration, such bond having been executed to guarantee the railroad company against loss by reason of the corporation's failure to fully perform under a contract whereby the shipper was billed at reduced rates on inbound rough materials upon its agreement to utilize the carrier in transporting finished products? (2) Did bankruptcy of the corporation and its consequent inability to ship in refined form relieve sureties on the bond?

The carrier's suit was heard on an agreed statement, a jury having been waived. The sureties have appealed from a judgment for $919.09.

The agreed statement is that prior to 1935 Fort Smith Body Company manufactured automobile body parts and other commodities. Lumber and supplies were purchased at distant places and brought to the company's plant in appellee's freight cars. The carrier's tariffs were on file with interstate commerce commission.

April 13, 1935, the shipper contracted with the carrier in respect to the carrier's freight tariffs 5023-AG and 5683-AB. The shipper's engagement was to fulfill all requirements of a so-called rough material tariff: (a) By utilizing the carrier's rail facilities in transporting to destination beyond the switching limits of Fort Smith such outbound tonnage as should meet requirements of the rough material tariff. (b) By keeping records of rough materials received and outbound tonnage and furnish to carrier the information so compiled. (c) By "[paying] to the carrier, within thirty days following presentation of bill, freight at full local rate or rates on any portion of rough material shipped into said plant . . . for which the percentage of tonnage required to be shipped outbound by rough material tariff shall not, within the time limit prescribed thereby, have been shipped as aforesaid." (d) ". . . execute for benefit of carrier . . . a written bond of indemnity, in the penal sum of $2,000, and having as sureties thereon two individuals acceptable to carrier, conditioned for performing of shipper's undertakings herein."

The bond was delivered the day contract was executed, with I. H. Nakdimen and Ben B. Johnson as sureties. Johnson was president of the body company. Nakdimen had no connection with it. The shipper received, from time to time, rough lumber on which the *special* inbound rates permitted by the tariffs were charged. It is conceded that the carrier did not receive the reshipment of finished products on inbound shipments as provided by tariff. Difference between rates paid on inbound lumber "and the regular rates account not reshipped aggregates $919.09."

March 6, 1939, the body company was adjudicated a bankrupt. It then had on hand 300,000 pounds of unprocessed lumber and an equal amount of finished materials. All of these commodities and supplies were disposed of by the trustee. A stipulation was: "The amount of the credits, if allowed on said materials on hand, would be $500."

The railroad company's claim was allowed by the referee, but nothing has been paid on it.

Appellants say it is elementary that a contract, to be binding, must be based upon some consideration, and cite *Lane* v. *Levillian,* 4 Ark. 76, 37 Am. Dec. 769; also *First National Bank* v. *Nakdimen,* 111 Ark. 223, 163 S. W. 785, Ann. Cas. 1916A, 968. While the abstract rule of law stated by appellants is correct, neither of the cases referred to sustains the conclusion contended for here. There *was* consideration. The contract was for the mutual benefit of those who made it. Rates on rough inbound lumber were fixed by tariff regulations; but, with sanction of interstate commerce commission, the carrier was allowed to make concessions on condition that it receive the manufactured article for shipment.

The arrangement is a permissive one through which the carrier, by reducing its inbound charges, is assured of additional traffic that might, but for the contract, go to a competitor. At the same time the shipper benefits to the extent of the lower rate on its rough materials.

The bond is an incident of the contract, and clearly each is supported by a valuable consideration. It is true a surety's promise, like any other contract, must rest upon consideration; but the surety need not be benefited. The surety's promise may repose upon the consideration received by the principal, or it may rest upon a disadvantage resulting to a creditor. *Kissire* v. *Plunkett-Jarrell Grocer Co.,* 103 Ark. 473, 145 S. W. 556.

The second contention is that bankruptcy was an intervening cause preventing manufacture of merchandise from 300,000 pounds of rough lumber, and shipment of 300,000 pounds of processed stocks. *Williams* v. *Maners,* 179 Ark. 110, 14 S. W. 2d 1104, is presented as author-

ity. A headnote is that a contractual provision in favor of a money lender, specifying that the lender should collect the indebtedness from rents on certain property, became unenforceable when the borrower's bankruptcy placed him in position preventing performance. The transaction was one between principals, rather than sureties. The case is therefore not applicable.

Title 11, USCA, § 34, provides that liability of a person who is a co-debtor with, or guarantor, or in any manner a surety for, a bankrupt, shall not be altered by the discharge of such bankrupt.

In *Polk* v. *Stephens,* 118 Ark. 438, 176 S. W. 689, it was held that Stephens' oral promise to pay a note, and a credit of one dollar, did not have the effect of reviving the obligation: ". . . the [circuit court] properly held that the plaintiff's cause of action against [Stephens] was barred by the discharge in bankruptcy." However, in the following paragraph Mr. Justice HART said: "The right of the creditor against third parties liable jointly with the bankrupt or secondarily for him are not impaired by the bankrupt's adjudication nor by the bankrupt's discharge." Remington on Bankruptcy, 2d ed., v. 2, § 1510, was cited. This seems to be the rule. *Leader* v. *Mattingly,* 140 Ala. 444, 37 So. 270; *D. C. Wise Coal Co.* v. *Columbia Lead & Zinc Co.,* 123 Mo. App. 249, 100 S. W. 680; *Maryland Casualty Co.* v. *Jones,* 140 Md. 395, 117 Atl. 765; *Witthaus* v. *Zimmerman,* 91 App. Div. 202, 86 N. Y. S. 315; *Dersch* v. *Walker,* 121 Ky. 374, 28 Ky. Law Rep. 325, 89 S. W. 233; *Rafferty* v. *Klein,* 256 Pa. 481, 100 Atl. 945.

It is finally insisted by appellants that in any event they should be allowed $500 as a credit on the materials not shipped.

This is not a suit for damages for failure to perform outbound obligations of the contract. It is an action against the sureties to collect the difference between tariff on inbound shipments and the rate actually paid under the contract induced by the promise to ship manufactured products. Expressed differently, the body company paid $919.09 less than regular rates on the inbound

lumber. The complaint says: "By reason of said failure [to reship] the plaintiff is entitled to local rates instead of the rough material tariff rate because of the failure [of the body company] to ship said finished products in the quantity required by said rough material tariff."

With discharge of the judgment, appellants will be entitled to subrogation in respect of the railroad company's claim to the extent of any payments made by the trustee in bankruptcy.

Affirmed.