CÁMARA INSULAR DE COMERCIANTES MAYORISTAS, Plaintiff and Appellee, *v.* M. ANADÓN, S. EN C. ET AL., Defendants and Appellants.

No. 12169. Decided September 1, 1961.

362

*Rodríguez Ema & Rodríguez Ramón, José A. Suro,* and *Antonio J. Amadeo* for plaintiff-appellee. *Rafael V. Pérez Marchand* for defendants-appellants.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

This appeal was filed by Marcelino Anadón Royo against the judgment rendered by the Superior Court, Ponce Part, which ordered him to pay to the Cámara Insular de Comerciantes Mayoristas $25,629.83 as principal plus legal interest up to July 11, 1955 and $500 for attorney's fees. It is unnecessary to elaborate on all the facts related to this suit and we shall limit ourselves to state those facts which are necessary in order to dispose adequately of the errors assigned.

■■ The original complaint was filed by the Cámara Insular de Mayoristas as "assignee" of thirty-four commercial entities established in the Island, against a mercantile partnership called M. Anadón, *S. en C.,* appellant Marcelino Anadón Royo and his son, Miguel Anadón Pontón.[1] The aforesaid partnership had been constituted during the latter

---

[1] Defendant Miguel Anadón Pontón filed an answer substantially denying the essential facts of the complaint. Afterward, he agreed to a stipulation admitting practically all of the facts alleged, including those concerning the existence, certainty, and enforceability of the debts claimed. Finally, the plaintiff voluntarily desisted, with prejudice, from his claim against this defendant.

part of 1952 by the other two defendants, the managing partner being Miguel Angel Anadón and his father as special partner. This partnership which was organized for retail business, took supplies and other goods on credit from the aforesaid thirty-four firms. The statement of accounts showed a balance in favor of the vendors for the total sum of $25,629.83. By public deed of May 8, 1954 executed before Notary José N. Dapena Laguna both partners proceeded to liquidate the partnership, which dissolution was made retroactive to the preceding November 9. For the purpose of the dissolution, the silent partner delivered to his son a specific amount of money, leaving him out of the partnership, and expressly releasing him from any liability, debt, compromise, and obligation, no matter their nature, which the partnership M. Anadón, S. en C. might have incurred until November 9, 1953, and assumed personal responsibility for the existing debts and obligations.[2] None of these deeds were registered in the Mercantile Registry.[3]

Appellant assigns the commission of three errors, to wit: (1) the trial court lacked jurisdiction; (2) absence of evi-

---

[2] During the trial the efforts of appellant's attorney were mainly aimed at suggesting an interpretation of the clause of the deed of dissolution which we copy below and which released him from the results of the liquidation. Despite his persistence, he did not succeed because the trial court held that he had assumed payment of the firm debts. This finding is not challenged. The aforesaid clause reads as follows:

"SECOND: Marcelino Anadón expressly releases Miguel Anadón Pontón from all liability, debt, compromise, and obligation no matter their nature which the firm 'M. ANADON, S. EN C.' might have incurred until November nine, nineteen hundred and fifty-three, assuming personal responsibility for the same in the way and manner established hereinafter."

[3] Registration of the partnership in the Mercantile Registry does not create a juridical person but merely establishes the necessity of its recognition by a third person. Instruments not recorded shall be binding among the members, but they shall not prejudice third persons, who, however may make use thereof in so far as advantageous. Sections 11, 12, and 17 of the Code of Commerce (10 L.P.R.A. §§ 1031, 1032, and 1038); *Quintana Brothers & Co.* v. *S. Ramírez & Co. et al.*, 22 P.R.R. 707 (1915). Hence in the present case, plaintiff may avail itself of the assumption of responsibility contained in the deed of dissolution which, for all practical purposes made appellant a joint debtor of the afore-mentioned partnership.

dence on the authority of the plaintiff firm to claim the credits referred to by "transfer," as "owner" thereof; and (3) error of law in holding that, despite the fact that plaintiff is a non-pecuniary organization, it may file the present action.

## I

The allegation of lack of jurisdiction is based on the fact that the "assignors" creditors had voluntarily claimed their respective credits within the bankruptcy proceedings of partnership M. Anadón S. en C., prior to the filing of this action, the District Court of the United States thus being the one with exclusive jurisdiction over the matter.

The evidence shows that the mercantile partnership M. Anadón, Son, S. en C. resorted to a voluntary bankruptcy proceeding before the United States District Court for the District of Puerto Rico; that all commercial firms which assigned their credits to the Cámara Insular de Mayoristas presented proof of claims during said proceeding; that on the date the action commenced, July 11, 1955, the aforesaid claims were pending and some of them had been admitted, although afterward —on June 29, 1956— their withdrawal was requested and granted.

 The liability of a codebtor, surety, or guarantor in any way for a bankrupt is not affected by its adjudication in bankruptcy. 11 U.S.C.A. § 34; *Fetter* v. *United States*, 269 F.2d 467 (C.A. 6, 1959) ; *United States* v. *Miller*, 162 F. Supp. 726 (La. 1958) ; *Johnston* v. *Missouri Pac. R. Co.*, 160 S.W. 2d 39 (Ark. 1942) ; *Bass* v. *Geiger*, 73 So. 796 (Fla. 1917) ; *Kirkholder & Rausch Co.* v. *Bridgland*, 199 N.Y.S. 113 (1923) ; *A. Klipstein & Co.* v. *Allen-Miles Co.*, 136 Fed. 385 (C.C.A. 1, 1905). The purpose of the section cited is to protect the right of any action that a creditor may have against any other person jointly liable with the bankrupt debtor. *First Nat. Bank of Hamilton* v. *Hoffman et al.*, 171 Pac. 13 (Kan. 1918) ; *Holland* v. *Cunliff*, 69 S.W. 737 (Mo. 1902). In other words the initiation of a bankruptcy proceeding is a

self defense that may be raised by the petitioner debtor but does not inure to the codebtors. *United States* v. *Rassmussen*, 184 F. Supp. 351 (Minn. 1960) ; *Trustees of Schools, etc.* v. *Chamberlain*, 78 N.E.2d 525 (Ill. 1948) ; *Matney* v. *Combs*, 198 S.E. 469 (Va. 1938). In order to have claim against the solidary codebtor or surety, it is immaterial that the creditor prove his claim against the principal debtor during the bankruptcy proceeding, *Gurley* v. *Robertson*, 59 So. 643 (Ala. 1912). Furthermore, he can prove his claim, receive the proportional part awarded the creditors, and then initiate an action against the codebtor for the unpaid balance. *E. Sole & Co., S. en C.* v. *Claudio*, 41 P.R.R. 937 (1931) ; *McClintic-Marshall Co.* v. *City of New Bedford*, 131 N.E. 444 (Mass. 1921). We decided since 1917 in *Santiago* v. *Ares*, 25 P.R.R. 446, that the claim a creditor might have filed before the District Court of the United States for Puerto Rico in a bankruptcy proceeding against the principal debt does not preclude him from filing the action of debt against the cosurety in solido, the latter having in his case to prove the total or partial liquidation of the debt. Likewise, the codebtor may release himself from liability by paying the creditor, and substituting himself for the latter in the claim in the bankruptcy proceeding, *Salitan* v. *Magnus*, 162 A.2d 883 (N.J. 1960) ; *Maryland Casualty Co.* v. *Jones*, 117 Atl. 765 (Md. 1922) ; *cf. Bustelo* v. *Cerra*, 48 P.R.R. 117 (1935). Specifically, the discharge of a partnership does not operate as a discharge of the individual partners unless the latter appear as petitioners individually. 11 U.S.C. § 23; *J. R. Watkins C.* v. *Brumfield*, 86 So. 2d 263 (La. 1956) ; *Marquette Cloak & Suit Co.* v. *Netter & Meyer*, 151 So. 820 (La. 1934). In *Pierluisi* v. *Monllor*, 42 P.R.R. 6, 16–17 (1931), we considered a similar situation and held that where bankruptcy is sought and decreed as to a mercantile partnership and not as to any of its members individually as well as the discharge of a partnership with regard to its debts, the adjudication does not discharge the members from the payment of partnership debts. In general,

see I Collier, Bankruptcy 1521-1550, § 16.01 *et seq.* (14th ed. 1956) ; VIII Remington, Bankruptcy 64, 162, § § 3237, 3308 (6th ed. 1955).

From the foregoing it may be inferred that the voluntary bankruptcy proceeding on which appellant seeks to rely does not preclude the creditors from filing an action against him, since he was not petitioner therein notwithstanding his condition as member of the bankrupt partnership. Nor is the creditors' complaint impaired by the fact that since they were included in the creditors' schedule, they appeared in court during the proceeding and filed their claims. As a matter of fact, their subsequent request to be eliminated from among the persons with a right to participate in the distribution in the bankruptcy, was unnecessary because, in any event, the only thing to which appellant would have been entitled was to have his liability limited to the same amount that the creditors might have received. Section 1097 of the Civil Code (31 L.P.R.A. § 3108) specifically authorizes the creditor to sue all or any of the joint debtors and states that "The actions instituted against one shall not be an obstacle for those that may be brought subsequently against the others, as long as it does not appear that the debt has been collected in full." *Stubbe Bros., Inc.* v. *Díaz,* 43 P.R.R. 75 (1932) ; *Cintrón & Aboy* v. *Solá,* 22 P.R.R. 245 (1915), affirmed in 237 Fed. 61 (1916).

## II

Cámara Insular de Mayoristas was organized in 1932 for an indefinite term as a nonprofit partnership under the provisions of Act No. 22 of March 9, 1911 (Sess. Laws, p. 74, 6 L.P.R.A. §§ 1-19). In its incorporation clauses it was stated that the purpose of the partnership was "to promote a greater union and cooperation among wholesalers and related dealers in order that they may help themselves mutually in all that tends to the greater development, progress, and welfare of their commercial interests, especially in that relating to

the *giving and extending* of credit; reduction, extension of time and suspension of payments; *attachments and bankruptcies* of the debtors to the members ..." (Italics ours.) In order to carry out this objective, the partnership "may buy, sell, barter . . . assign or in any other way alienate personal, real or movable property, rights, *credits* . . . of all sorts . . . without any other limitation than that expressly stipulated in the Act or in these covenants" (italics ours) and in general, "execute any such acts and contracts as any natural person in the full exercise of his civil rights may carry out within his own property." It was expressly provided that it could act as "administrator, *assignee, agent*, attorney in fact or delegate of its members or of any one of them in handling any matter, affair, transaction, business or contract in which they might be interested or which affects or benefits its members," (italics ours) and it could *sue* and *be sued* and *appear at any court.* Cf. *Logia Caballeros del Plata* v. *García*, 63 P.R.R. 279 (1944); *González, Calderón & Co.* v. *Córdova Dávila*, 25 P.R.R. 627 (1917).

 According to the explanation given by the partnership's administrator, the assignments of claims of the members are usually verified when a retail merchant is not able to pay the debts owed to the wholesalers. The Cámara becomes assignee of the amount due, undertakes collection thereof, and if successful, receives twelve per cent of the amount recovered. No price whatsoever is provided for the acquisition of credits, it is made orally or in writing,[4] and the so-called "assignment" is effected on condition that it will become ineffective if the account "is involved in a bankruptcy proceeding in the Federal Court." The money the Chamber receives when the collection of debts are successful is used by the partnership to pay office expenses. The evidence did not show that any person whatsoever made profit from these

---

[4] Oral evidence is sufficient to show the assignment of the mercantile credits. *M. Rodríguez & Co.* v. *Sons of Mari*, 35 P.R.R. 512 (1926).

activities and affairs, rather it showed that substantial savings were made for the individual members by the collection of their own credits.

■ From the foregoing it is clearly evident that the plaintiff partnership had express authority to "acquire" the members' credits. We do not believe this is contrary to law and public order. The least that can be averred under the facts of this case is that plaintiff acted as agent for its members, and obviously as we shall see, the defendant appellant could not present any objection in the absence of a showing that it was thereby prejudiced —protection against a double payment— something which was not proved.

■ Now, then, in a stipulation dated September 17, 1956, the appellant limited the controversy to the effects of the clause copied in the preceding footnote 2 as to its personal liability for the partnership's debts. During the trial his only objection to said stipulation consisted in the denial of the second fact relating to the liquidation of the debts, but the trial court held that he actually had accepted said fact at the preliminary hearing. Thus, no condition was made in the stipulation on the question now raised as to plaintiff's status.[5]

■ ■ Appellant alleges that in view of the fact that the members' accounts were involved in the bankruptcy proceeding of the M. Anadón, *S. en C.* partnership, the "assignment"

---

[5] Appellant's attorney unequivocally stated that "the judge committed error in finally holding that this party *has never denied* the representative capacity of the plaintiff nor ever denied the corporate character of the plaintiff." (Tr. Ev. 49). Later he explained that "the question raised *does not involve the status of the plaintiff,* (rather) the *legitimacy* of the assignment business . . ." (Tr. Ev. 53); and that " . . . we already accepted the status...what we do not accept is that as Cámara de Mayoristas, under the terms of its franchise, the plaintiff may transact the business of assignment by virtue of which it becomes plaintiff in this case." (Tr. Ev. 54.) (Italics ours.)

Certainly, if it is sought to challenge plaintiff's capacity, said defense may not be raised at this stage of the proceedings. Rule 9 (*a*) of Civil Procedure of 1943, corresponding to Rule 7.1 of 1958; *Jones* v. *Schellenberger,* 196 F.2d 852, 854 (C.A. 7, 1952); 2 Moore, Federal Practice 1905, § 9.02.

made remained without effect by virtue of its own terms. In truth, apart from what we stated in the discussion on the first error as to a joint debtor's liability, the aforesaid clause might be important if the objection were raised by the partnership, but not when it is brandished by the codebtor, in his personal character, in the face of a claim based on his voluntary assumption of liability for the debts of the partnership. Also, as was satisfactorily explained, the only scope of this saving clause is to permit wholesalers to rely on a greater number of votes for the purpose of confirming or rejecting the composition and extension plans that might be proposed by the debtor who has voluntarily submitted to the proceedings provided by the Bankruptcy Act.

On the other hand, Anadón Royo is not in a position to challenge the assignment made because it has not caused him any prejudice. As we stated in *Matheu* v. *Colón*, 49 P.R.R. 365, 374 (1936) referring to the assignment of a contract of conditional sale and its challenge by the debtor: "His rights and obligations under the said contract remained unaffected. The only alteration consists in a change of creditor. The assignment did not create any new obligation for said debtor. The fact that he now is indebted to Matheu instead of to the original seller does not mean that a new obligation exists. On the contrary, his debt owing to Matheu has its origin exclusively in the contract of conditional sale." Since *Morales* v. *Blanco*, 15 P.R.R. 222 (1909), we had stated that the consent of the debtor is not required to transfer or assign credits, it being sufficient that the debtor have knowledge of the transfer in order that he be obligated to the creditor. Section 265 of the Code of Commerce (10 L.P.R.A. § 1741); *Espinet* v. *Alvarez*, 25 P.R.R. 329 (1917); *M. Rodríguez & Co.* v. *Sons of Mari*, 35 P.R.R. 512 (1926).

Nor are we now dealing with the assignment of a credit in controversy since upon making the assignment, not only had no answer been filed to any complaint but no complaint

had even been filed. Section 1425 of the Civil Code (31 L.P.R.A. § 3950) ; *Martínez* v. *District Court; Mercury, Int.,* 72 P.R.R. 197 (1951); *Santana* v. *Quintana,* 52 P.R.R. 725 (1938). Nor is the right of action barred by the fact that no consideration appears in the assignment or transfer and even that the assignors preserved certain rights over any amount they might recover. *Clark* v. *Andrews,* 240 P.2d 330 (Cal. 1952); *King* v. *Mortimer,* 188 P.2d 502 (Cal. 1948); *Heitzmann* v. *Willys-Overland Motors, Inc.,* 68 F. Supp. 873 (D.C. N.Y. 1946).

The errors assigned not having been committed, the judgment rendered by the Superior Court, Ponce Part, on December 11, 1956, will be affirmed.