CÁMARA INSULAR DE COMERCIANTES MAYORISTAS, demandante-apelada, *v.* M. ANADÓN, S. EN C., ET AL, demandados-apelantes.

Número: 12169. Resuelto: 1 de septiembre de 1961.

*Rodríguez Ema & Rodríguez Ramón, José A. Suro* y *Antonio J. Amadeo*, abogados de la demandante-apelada; *Rafael V. Pérez Marchand*, abogado de los demandadados-apelantes.

Sala integrada por el Juez Presidente señor Negrón Fernández como Presidente de Sala y los Jueces Asociados señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El presente recurso de apelación se interpuso por Marcelino Anadón Royo contra la sentencia dictada por la Sala de Ponce del Tribunal Superior, por la cual se le condenó a satisfacer a la Cámara Insular de Comerciantes Mayoristas la suma principal de $25,629.83, sus intereses legales hasta el día 11 de julio de 1955 y la cantidad de $500 para honorarios de abogado. No es necesario que nos extendamos en la exposición de todos los hechos que se relacionan con este pleito, y nos limitaremos a reseñar aquellos que es preciso considerar para disponer adecuadamente de los errores apuntados.

La demanda original se dirigió por la Cámara Insular de Comerciantes Mayoristas, como "cesionaria" de treinta

y cuatro entidades comerciales establecidas en la Isla, contra una sociedad mercantil denominada M. Anadón, S. en C., el apelante Marcelino Anadón Royo y su hijo Miguel Anadón Pontón.(¹) La sociedad mencionada había sido constituida a fines del año 1952 por los otros dos demandados, figurando Miguel Angel Anadón como socio gestor, y su padre como socio comanditario. Esta sociedad, que se organizó para el ejercicio del comercio al por menor, tomó provisiones y otros efectos en cuenta corriente a las treinta y cuatro firmas comerciales a que se ha hecho referencia. El resultado de la liquidación de dichas cuentas arrojó un balance favorable a las firmas vendedoras por la cantidad total de $25,629.83. Mediante escritura pública de fecha 8 de mayo de 1954 otorgada ante el Notario José N. Dapena Laguna los dos socios procedieron a la liquidación de la sociedad retrotrayendo los efectos de la disolución al día 9 de noviembre anterior. A los fines de la disolución, el socio comanditario entregó a su hijo determinada cantidad de dinero, quedando así éste fuera de la mercantil, y expresamente le liberó de toda responsabilidad, deuda, compromiso y obligaciones, cualesquiera que fuese su naturaleza, en que hubiera incurrido la sociedad M. Anadón, S. en C., hasta el día 9 de noviembre de 1953, y asumió responsabilidad personal por las deudas y obligaciones

---

(¹) El demandado Miguel Anadón Pontón presentó una contestación negando sustancialmente los hechos materiales de la demanda. Posteriormente, concurrió en una estipulación admitiendo prácticamente todos los hechos alegados, incluyendo los relativos a la existencia, certeza y exigibilidad de las deudas reclamadas. Finalmente, la demandante desistió, con perjuicio, de su reclamación contra este demandado.

existentes.([2]) Ninguna de estas escrituras fue inscrita en el Registro Mercantil.([3])

El apelante señala la comisión de tres errores, a saber: (1) falta de jurisdicción de la sala sentenciadora; (2) falta de prueba sobre la facultad de la entidad demandante para reclamar los créditos aludidos por "cesión", como "dueña" de los mismos; y (3) error de derecho al resolver que, a pesar de que la demandante es una institución sin fines pecuniarios, puede instar la presente acción.

## I

La alegación sobre falta de jurisdicción se funda en que con anterioridad a la radicación de la acción los acreedores "cedentes" habían reclamado voluntariamente sus respectivos créditos dentro del procedimiento de quiebra de la sociedad M. Anadón, S. en C., siendo, por tanto, la Corte de Distrito de Estados Unidos el tribunal con jurisdicción exclusiva sobre el asunto.

---

([2]) Gran parte de los esfuerzos del abogado del apelante durante la vista celebrada estuvieron enderezados a proponer una interpretación de la cláusula de la escritura de disolución que copiamos a continuación que liberaba a éste de las resultas de la liquidación. A pesar de su tenacidad, no lo logró, pues el tribunal de instancia determinó que había asumido el pago de las deudas sociales. Esta conclusión no se impugna. La cláusula de referencia lee como sigue:

"SEGUNDA: Don Marcelino Anadón, expresamente libera a don Miguel Anadón y Pontón de toda responsabilidad, deuda, compromiso, y obligación, caulesquiera que fuere su naturaleza en que hubiera incurrido la comercial 'M. ANADON, S. EN C.', a la fecha de nueve de noviembre de mil novecientos cincuenta y tres, y responsabilizándose personalmente de las mismas, en la forma y modo que más adelante se establece."

([3]) La inscripción de la sociedad en el Registro Mercantil no crea la personalidad jurídica y meramente determina la necesidad de su reconocimiento por un tercero. La escritura no registrada surte sus efectos entre los socios, pero no perjudica a tercero, quien en todo caso puede utilizarla en lo que le sea favorable. Artículo 11, 12 y 17 del Código de Comercio (10 LPRA secs. 1031, 1032 y 1038); *Quintana Hnos. & Cía.* v. *S. Ramírez & Co.* 22 D.P.R. 761 (1915). De ahí que en el presente caso, la demandante pueda valerse de la asunción de responsabilidad contenida en la escritura de disolución, que para todos los efectos prácticos convirtió al apelante en un codeudor de la sociedad mencionada.

La prueba revela que la sociedad mercantil M. Anadón Hijo, S. en C. se acogió a un procedimiento de quiebra voluntaria ante la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico; que todas las firmas comerciales que cedieron sus acreencias a la Cámara Insular de Comerciantes Mayoristas presentaron reclamaciones (*proof of claims*) dentro de dicho procedimiento; que para la fecha de la iniciación del pleito, en 11 de julio de 1955, las reclamaciones de referencia estaban pendientes y algunas de ellas habían sido reconocidas, aunque posteriormente—en 29 de junio de 1956— se solicitó y autorizó su retiro.

La responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de éste. 11 USCA sec. 34; *Fetter* v. *United States*, 269 F.2d 467 (CA 6, 1960); *United States* v. *Miller*, 162 F.Supp. 726 (La. 1958); *Johnston* v. *Missouri Pac. R. Co.*, 160 S.W.2d 39 (Ark. 1942); *Bass* v. *Geiger*, 73 So. 796 (Fla. 1917); *Kirkholder & Rausch Co.* v. *Bridgland*, 199 N.Y.S. 113 (1923); *A. Klipstein & Co.* v. *Allen-Miles Co.*, 136 Fed. 385 (CA 1, 1905). El propósito de la sección citada es proteger el ejercicio de cualquier acción que tenga el acreedor contra cualquier otra persona que se hubiere obligado conjuntamente con el deudor quebrado. *First Nat. Bank of Hamilton* v. *Hoffman et al.*, 171 Pac. 13 (Kan. 1918); *Holland* v. *Cunliff*, 69 S.W. 737 (Mo. 1902). En otras palabras, la iniciación del procedimiento de quiebra es una defensa personal que puede levantarse por el deudor peticionario únicamente, pero que no beneficia a los codeudores. *United States* v. *Rassmussen*, 184 F.Supp. 351 (Minn. 1960); *Trustees of Schools, etc.* v. *Chamberlain*, 78 N.E.2d 525 (Ill. 1948); *Matney* v. *Combs*, 198 S.E. 469 (Va. 1938). A los fines de poder reclamar contra el codeudor solidario o fiador, es inmaterial que el acreedor pruebe su reclamación contra el deudor principal dentro del procedimiento de quiebra, *Gurley* v. *Robertson*, 59 So. 643 (Ala. 1912). Es más, puede

probar su reclamación, recibir la parte proporcional que se adjudique a los acreedores, y dirigir entonces su acción por el balance contra el codeudor, *E. Sole & Co., S. en C.* v. *Claudio*, 41 D.P.R. 950 (1931); *McClintic-Marshall Co.* v. *City of New Bedford*, 131 N.E. 444 (Mass. (1921)). Desde 1917 resolvimos en *Santiago* v. *Ares*, 25 D.P.R. 481, que la reclamación que un acreedor haya podido hacer ante la Corte de Distrito de Estados Unidos para Puerto Rico en un procedimiento de quiebra contra la deuda principal no le impide ejercitar la acción de cobro contra el fiador solidario, incumbiendo a éste en su caso probar la extinción total o parcial de la deuda. Igualmente, el codeudor puede liberar su responsabilidad pagándole al acreedor y subrogándose en lugar de éste en la reclamación en el procedimiento de quiebra, *Salitan* v. *Magnus*, 162 A.2d 883 (N.J. 1960); *Maryland Casualty Co.* v. *Jones*, 117 Atl. 765 (Md. 1922) cf. *Bustelo* v. *Cerra* 48 D.P.R. 120 (1935). Específicamente, la exoneración (*discharge*) de una sociedad no opera como una exoneración de los socios individuales, a menos que éstos figuren como peticionarios en su carácter individual. 11 U.S.C. sec. 23; *J. R. Watkins Co.* v. *Brunfield*, 86 So.2d 263 (La. 1956); *Marquette Cloak & Suit Co.* v. *Netter & Meyer*, 151 So. 820 (La. 1934). En *Pierluisi* v. *Monllor*, 42 D.P.R. 7, 17–18 (1931) tuvimos oportunidad de considerar una situación similar y resolvimos que la declaración de quiebra solicitada y declarada en cuanto a una sociedad mercantil y no en cuanto a sus socios individualmente, así como la exoneración de la sociedad en cuanto a sus deudas, no exonera a los socios individualmente en cuanto al pago de las deudas sociales. En general, véanse, Collier *on Bankruptcy* (14a. ed., 1956), vol. I, sec. 16.01 *et seq.*, págs. 1521–1550; Remington *on Bankruptcy* (6a. ed., 1955), Vol. VIII, sec. 3237, pág. 64, y sec. 3308, pág. 162.

De todo lo expuesto se deduce que el procedimiento de quiebra voluntaria en que pretende ampararse el apelante no impide a los acreedores entablar acción judicial contra él

ya que éste no fue parte peticionaria en el mismo, no obstante su condición de miembro de la sociedad en quiebra. Tampoco perjudica la demanda de los acreedores el hecho de que, habiéndoseles incluido en la lista (*schedule*) de acreedores, comparecieran dentro del procedimiento y presentaran sus reclamaciones. Como cuestión de realidad, la actuación posterior de éstos solicitando su eliminación de las personas con derecho a participar en la distribución en la quiebra, era innecesaria, pues, en todo caso, el apelante a lo único que hubiese tenido derecho era a que su responsabilidad se redujera por la misma cantidad que aquéllos pudieran recibir. Específicamente el artículo 1097 del Código Civil (31 LPRA sec. 3108) autoriza al acreedor a dirigirse contra todos o cualquiera de los deudores solidarios y expresa que "(l)as reclamaciones entabladas contra uno no serán obstáculo para las que posteriormente se dirijan contra los demás, mientras no resulte cobrada la deuda por completo". *Stubbe Bros., Inc.* v. *Díaz*, 43 D.PR. 79 (1932) ; *Cintrón & Aboy* v. *Solá*, 22 D.P.R. 262 (1915), confirmado en 237 Fed. 61 (1916).

## II

La Cámara Insular de Comerciantes Mayoristas se organizó por término indefinido en el año 1932 como una asociación sin fines pecuniarios bajo las disposiciones de la Ley de 9 de marzo de 1911 (Leyes, pág. 79, 6 LPRA secs. 1 a 19). En sus cláusulas de incorporación se indicó que el propósito de la asociación era "fomentar una mayor unión y cooperación entre los comerciantes mayoristas y negociantes afines con el propósito de ayudarse mutuamente en todo cuanto tienda al mayor desarrollo, progreso y bienestar de sus intereses comerciales, especialmente en lo relacionado con *el otorgamiento y extensión* de créditos; quita, espera y suspensión de pagos; *embargo y quiebras* de los deudores de los miembros asociados. . ." (Bastardillas nuestras.) Para llevar a cabo este objetivo, la asociación "podrá comprar, vender, permutar . . . ceder o en cualquier otra forma enajenar (*sic*)

bienes muebles, inmuebles o semovientes, derechos, *créditos* . . . de todas clases . . . sin más limitación que la expresamente estipulada en la Ley o en estas cláusulas" (Bastarillas nuestras) y en general, "ejercitando todos aquellos actos y contratos que cualquier persona natural en la plenitud de sus derechos civiles pueda llevar a cabo sobre sus propios bienes". Expresamente se dispuso que podría actuar con el carácter de "administradora, *cesionaria, mandataria,* apoderada o comisaria de sus asociados o de cualquiera de ellos en la gestión de cualquier asunto, cuestión, operación, negocio o contrato en que estén interesados o que afecte o beneficie a sus asociados", (Bastardillas nuestras) y que podría *demandar y ser demandada y concurrir ante cualquier tribunal.* Cf. *Logia Caballeros del Plata* v. *García,* 63 D.P.R. 291 (1944) ; *González* v. *Córdova,* 25 D.P.R. 673 (1917).

 Según la explicación ofrecida por el adiestramiento de la asociación, las cesiones de créditos de los asociados se verifican usualmente cuando un comerciante detallista no puede afrontar las obligaciones contraídas con los mayoristas. La Cámara se convierte en cesionaria de las acreencias, gestiona su cobro, y si tiene éxito, percibe una cantidad igual al doce por ciento de lo recobrado. En la adquisición de los créditos no media precio alguno, se hace oralmente o por escrito, [4] y la denominada "cesión" se efectúa con la reserva de que quedará sin efecto en caso de que la cuenta "se vea envuelta en un procedimiento de quiebra o arreglo en la Corte Federal". Las cantidades que recibe la Cámara cuando prosperan las gestiones de cobro se destinan a sufragar los gastos en que se incurre por la asociación en el mantenimiento de sus oficinas. La prueba no demostró que persona alguna se lucrara con estas actividades y en estos menesteres, sino más bien, que la organización resulta en economías sustanciales para los asociados individuales en el cobre de sus respectivas acreencias.

---

[4] Es suficiente prueba oral para probar la cesión de créditos mercantiles. *M. Rodríguez y Cía.* v. *Hijos de J. F. Mari,* 35 D.P.R. 559 (1926).

■ De la exposición hecha resulta claramente que la asociación demandante tenía facultades expresas para "adquirir" los créditos de sus asociados. No creemos que ello sea contrario a la ley y al orden público. Lo menos que puede afirmarse bajo los hechos de este caso es que la demandante actuaba como mandataria de sus asociados, y obviamente, como veremos, el demandado apelante no podía oponer reparo alguno a ello, en ausencia de que ello le causara perjuicio—protección contra un doble pago—lo que no se demostró.

■ Ahora bien, el apelante en una estipulación de fecha 17 de septiembre de 1956 limitó la controversia a los efectos de la cláusula transcrita en el escolio 2 precedente en cuanto a su responsabilidad personal por las deudas de la sociedad. Su único reparo a dicha estipulación en el acto del juicio consistió en la repudiación del hecho segundo relativo a la liquidación del monto de las acreencias, pero el tribunal de instancia resolvió que efectivamente en el acto de la conferencia preliminar había hecho tal aceptación. No se hizo, pues, reserva alguna en la estipulación de la cuestión que ahora se plantea sobre la capacidad de la demandante. (⁵)

■ Arguye el apelante que en vista de que las cuentas de los asociados figuraron en el procedimiento de quiebra de la sociedad M. Anadón, S. en C., la "cesión" efectuada quedó

(⁵) El abogado del demandado apelante manifestó inequívocamente que "es un error del Juez establecer conclusivamente que esta parte *haya negado jamás* la capacidad representativa de la demandante ni haya negado jamás el carácter de corporación que tiene la demandante" (T.E., pág. 49). Aclaró luego que "la cuestión planteada *no envuelve la capacidad de ·la parte demandante*, [sino] que es la *legitimidad* del negocio de cesión . . ." (T.E., pág. 53); y que ". . . ya aceptamos la capacidad . . . lo que no aceptamos es que como Cámara de Comerciantes, bajo los términos de su franquicia, la demandante pueda realizar el negocio de cesión, a virtud [*sic*] de lo cual se constituye en demandante en este caso." (T. E., pág. 54). (Bastardillas nuestras.)

Ciertamente, si lo que se intenta es impugnar la capacidad de la demandante, tal defensa no puede levantarse en esta etapa de los procedimientos. Regla 9 (a) de las de Enjuiciamiento Civil de 1943, correspondiente a la Regla 7.1 de 1958; *Jones* v. *Schellenberger*, 196 F.2d 852, 854 (CA 7, 1952) ; Moore, *Federal Practice*, vol. 2, sec. 9.02, pág. 1905.

sin efecto por virtud de sus propios términos. En realidad, aparte de lo ya expuesto en la discusión del primer error sobre la responsabilidad de un codeudor, la cláusula mencionada podría tener importancia si el reparo se levantara por la sociedad, pero no cuando ello se esgrime por el codeudor, en su carácter personal, frente a una reclamación fundada en su voluntaria asunción de responsabilidad por las deudas de dicha razón social. Además, como se explicó satisfactoriamente, el único alcance de esta reserva es permitir a los mayoristas contar con un número mayor de votos a los fines de la confirmación o rechazo de los planes de quita y espera (*composition and extension*) que puedan proponerse por el deudor que se ha acogido voluntariamente a los procedimientos provistos por la Ley de Quiebras.

Por otro lado, Anadón Royo no está en condiciones de impugnar la cesión verificada pues ésta no le ha ocasionado perjuicio alguno. Como se dijo en *Matheu* v. *Colón*, 49 D.P.R. 376, 387 (1936), refiriéndose a la cesión de un contrato de venta condicional y a su impugnación por el deudor: "Sus derechos [del deudor] y obligaciones de acuerdo con el referido contrato permanecen intocados. La única alteración consiste en haber cambiado la persona del acreedor. La cesión no creó nuevas obligaciones para el referido deudor. El hecho de que ahora le deba a Matheu y no a la vendedora original no significa que exista una nueva obligación. Por el contrario, su deuda con Matheu tiene su origen exclusivamente en el contrato de venta condicional." Ya desde *Morales* v. *Blanco*, 15 D.P.R. 237 (1909) habíamos expresado que no se requiere el consentimiento del deudor para la transferencia o cesión de créditos, y que basta que el deudor tenga conocimiento de la cesión para que quede obligado con el cesionario. Artículo 265 del Código de Comercio (10 LPRA sec. 1741); *Espinet* v. *Alvarez*, 25 D.P.R. 357 (1917); *M. Rodríguez & Cía.* v. *Hijos de J. F. Mari*, 35 D.P.R. 559 (1925).

386

· Tampoco se trata aquí de la cesión de un crédito litigioso, ya que al verificarse la transferencia, no sólo no se había contestado demanda alguna en relación con el mismo, sino que ni siquiera ésta se había iniciado. Artículo 1425 del Código Civil (31 LPRA sec. 3949) ; *Martínez, Jr.* v. *Tribunal de Distrito,* 72 D.P.R. 207 (1951) ; *Santana* v. *Quintana,* 52 D.P.R. 749 (1938). Ni obsta al ejercicio de la acción el hecho de que en la transferencia o cesión no mediara causa, y hasta que los cedentes conservaran ciertos derechos en cualquier cantidad que se recobrara. *Clark* v. *Andrews,* 240 P.2d 330 (Cal. 1952) ; *King* v. *Mortimer,* 188 P.2d 502 (Cal. 1948) ; *Heiztmann* v. *Willys-Overland Motors, Inc.,* 68 F.Supp. 873 (D.C. N.Y. 1946).

*No habiéndose cometido los errores señalados, debe confirmarse la sentencia que dictó la Sala de Ponce del Tribunal Superior en 11 de diciembre de 1956.*

