Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| JAVIER LÓPEZ GONZÁLEZ Y OTROS | | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas |
|---|---|---|
| Apelantes | TA2025AP00384 | |
| v. | | Caso Núm. CG2024CV03780 |
| MARANGELI JIMÉNEZ RIVERA Y OTROS | | Sobre: Cobro de Dinero (ordinario); Daños |
| Apelados | | |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Domínguez Irizarry, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de diciembre de 2025.

Comparece la parte apelante, Javier López González y Margarita Dueño Quiñones (en adelante y en conjunto, parte apelante) y nos solicita la revisión de la *Sentencia* emitida el 28 de agosto de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala de Caguas. Mediante esta, el Foro Primario desestimó la *Demanda* por falta de jurisdicción.

Por los fundamentos que expondremos a continuación, se revoca la *Sentencia* apelada.

**I**

Luego de celebrado el juicio en su fondo, en el caso civil número K AC20044764, el 1 de noviembre de 2019, el Tribunal de Primera Instancia, Sala de San Juan notificó una *Sentencia* a favor de la parte apelante en una causa de acción sobre incumplimiento de contrato y cobro de dinero.[1] Mediante esta, el Foro Primario condenó al señor Abraham Jiménez Rivera (en adelante, señor Jiménez Rivera), su esposa Nelly Rivera Cano (en adelante, la señora

---

[1] Apéndice del recurso, Entrada Núm. 1, Anejo 2.

Rivera Cano), la Sociedad Legal de Gananciales compuesta por ambos, Monte Real Development Corp., y AJR Contractors Co., Inc. (en adelante y en conjunto, codemandados), al pago de diez millones quinientos cuatro mil quinientos nueve dólares con diecisiete centavos ($10,504,509.17), por concepto de los daños pecuniarios ocasionados a la parte apelante, cuya cantidad incrementaría a razón de ochocientos sesenta y ocho dólares con cincuenta y seis centavos ($868.56) de interés. Igualmente, ordenó a satisfacer una cuantía ascendente a trescientos mil dólares ($300,000.00) por concepto de las angustias mentales percibidas.

Del referido dictamen surge que, previo al comienzo del juicio, el 7 de julio de 2016, el señor Jiménez Rivera falleció intestado, y que sus hijas, Marangelí Jiménez Rivera, Joanne Jiménez Rivera y Linda Nelly Jiménez Rivera (en adelante y en conjunto, parte apelada o hermanas Jiménez Rivera), repudiaron la herencia. En adición, el Foro de Instancia señaló que la *Sentencia* tendría efectos limitados, ya que la señora Rivera Cano se acogió a un procedimiento bajo la Ley de Quiebras, en el caso número 19-02119-ESL, y obtuvo el correspondiente descargo. Por tanto, razonó que, a pesar de que los efectos del aludido dictamen estarían supeditados a lo dispuesto en dicho procedimiento, no así en cuanto a la comunidad hereditaria que surgió a raíz de la muerte la muerte del señor Jiménez Rivera, al igual que con la Sociedad Legal de Bienes Gananciales compuesta por este y la señora Rivera Cano.

Precisa destacar que del referido dictamen surge que, con anterioridad, mediante *Resolución* emitida en el año 2010, se había determinado que los aludidos codemandados, le adeudaban a la parte apelante un cuarenta por ciento (40%) de los beneficios derivados de la corporación Monte Real, así como los daños sufridos producto del incumplimiento contractual.

Luego de varios años, el 11 de octubre de 2024, la parte apelante presentó la *Demanda* de epígrafe sobre nulidad de compraventa y ejecución de sentencia, en contra de las hermanas Jiménez Rivera.[2] En esta, alegó que la parte apelada vendió en calidad de propietaria un inmueble ubicado en la Urbanización Montehiedra, en San Juan, que formó parte del caudal del señor Jiménez Rivera y la señora Rivera Cano, y que el mismo estaba sujeta a la obligación de pago de la *Sentencia* notificada el 1 de noviembre de 2019. En específico, arguyó que las hermanas Jiménez Rivera habían repudiado la herencia del señor Jiménez Rivera, por lo que no podían disponer de dicho bien. Por ello, planteó que tanto la compraventa inicial del inmueble, como las ventas posteriores, eran nulas, y, por consiguiente, la aludida transacción efectuada por las hermanas Jiménez Rivera constituyó fraude de acreedores. De este modo, la parte apelante le solicitó al Tribunal de Primera Instancia que declarara la ineficacia de las referidas compraventas, y ordenara la restitución de estas con sus frutos, para que este pudiese cobrar su crédito.

Posteriormente, el 16 de marzo de 2025, las hermanas Jiménez Rivera presentaron una *Moción Solicitando la Desestimación* al amparo de la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, por falta de jurisdicción sobre la materia.[3] Mediante esta, señalaron que sus progenitores, el señor Jiménez Rivera y la señora Rivera Cano, otorgaron una primera hipoteca a favor de Sun West Mortgage Company, al igual que una segunda a favor del Secretario de la Vivienda y Desarrollo Urbano. Alegaron que el único bien inmueble en posesión del señor Jiménez Rivera al fallecer era la propiedad en controversia. Las hermanas Jiménez Rivera arguyeron que, tras haber repudiado la herencia el 11 de octubre de

---

[2] *Íd.*, Entrada Núm. 1.
[3] *Íd.*, Entrada Núm. 53.

2016, y retrotraerse las consecuencias de dicho acto al momento del fallecimiento, la señora Rivera Cano advino a ser la única y universal heredera del señor Jiménez Rivera el 7 de julio de 2016. Por consiguiente, sostuvieron que ocurrió una confusión de derechos que liquidó, tanto la Sociedad Legal de Gananciales, como la comunidad de bienes posterior a la muerte del referido causante.

Además, las hermanas Jiménez Rivera sostuvieron que, al presentar la petición de quiebra el 16 de abril de 2019, todos los activos de la señora Rivera Cano, incluyendo la propiedad en cuestión, formaron parte del *Bankruptcy State*.[4] Enfatizaron que la reclamación de la parte apelante, entiéndase la del pleito número K AC20044764, fue incluida en la referida solicitud, y debidamente notificada, sin embargo la parte apelante no compareció al procedimiento de quiebra.[5] Señalaron que, tras aprobar un *Reaffirmation Agreement,* el 19 de julio de 2019, entre la señora Rivera Cano y Sun West Mortgage Company, sobre la primera hipoteca que gravaba el inmueble, la Corte de Quiebras le otorgó a esta el descargo total de sus deudas.[6] Según detallaron, posterior a ello, el 9 de noviembre de 2019, la señora Rivera Cano falleció, dejándolas como únicas herederas. Por consiguiente, alegaron que, al heredar la propiedad en cuestión, a través del caudal de esta, la misma no estaba sujeta a ser utilizada para el pago de la aludida *Sentencia* a favor de la parte apelante.

Luego de que el Foro de Instancia celebrara una vista argumentativa, el 21 de abril de 2025, la parte apelante presentó su *Moción Recogiendo Posición Expresa en la Vista de 11 de abril de 2025 y en Oposición a la Desestimación.*[7] En esencia, esta alegó que, en virtud del Artículo 980 del Código Civil de 1930, 31 LPRA ant.

---

[4] *Íd.*, Entrada Núm. 53, Anejo. 2.
[5] *Íd.*, Entrada Núm. 53, Anejo Núm. 3.
[6] *Íd.*, Entrada Núm. 53, Anejos Núm. 4-6.
[7] *Íd.*, Entrada Núm. 71.

sec. 2817, se tenían que pagar las deudas del señor Jiménez Rivera, previo a la adjudicación de su caudal. Sostuvo que, a partir de la *Resolución* emitida en el año 2010, el señor Jiménez Rivera se convirtió en deudor de la parte apelante. Consecuentemente, adujo que el descargo de quiebra de la señora Rivera Cano solo afectó su propio caudal, y no el del señor Jiménez Rivera, ya que este no se liquidó. Por último, la parte apelante arguyó que, al amparo de los Artículos 956 y 957 del referido estatuto, 31 LPRA ant. secs. 2784-2785, las hermanas Jiménez Rivera respondían por la deuda del señor Jiménez Rivera, por lo que no procedía la desestimación solicitada.

El 27 de abril de 2025 las hermanas Jiménez Rivera presentaron una *Réplica a Documento 71*.[8] En síntesis, reiteraron sus previos argumentos, sosteniendo que la señora Rivera Cano heredó la propiedad en controversia al estas repudiar el caudal del señor Jiménez Rivera. Con su escrito, anejaron una *Resolución*, emitida el 27 de febrero de 2020 por el Tribunal de Primera Instancia, Sala de San Juan, mediante la cual se declaró como única y universal heredera del señor Jiménez Rivera a la señora Rivera Cano.[9]

Así las cosas, el 28 de agosto de 2025, el Tribunal de Primera Instancia emitió la *Sentencia* apelada, mediante la cual desestimó el caso por falta de jurisdicción.[10] En su dictamen, el Foro Primario razonó que era de aplicación la doctrina federal de *res judicata*, específicamente bajo la excepción de *nonparty preclusion*, conforme a lo resuelto en el caso *Comisión v. González Freyre et al.*, 211 DPR 579 (2023), por lo que existía un impedimento en ley para conceder el remedio solicitado. Expuso que, al haberse acogido la señora

---

[8] *Íd.*, Entrada Núm. 73.
[9] *Íd.*, Entrada Núm. 73, Anejo Núm. 1.
[10] *Íd.*, Entrada Núm. 84.

Rivera Cano al procedimiento de quiebra, obteniendo una orden de descargo, la parte apelante había desaprovechado su oportunidad de reclamar lo adeudado al no comparecer. De este modo, concluyó que la deuda reclamada por la parte apelante formó parte del caudal protegido por la orden de descargo.

Inconforme, el 26 de septiembre de 2025, la parte apelante presentó el recurso de epígrafe. En este, señala la comisión de los siguientes errores:

> Erró el TPI al desestimar la Demanda en el umbral cuando de la misma surgen hechos que justifican las causas de acción alegadas.

> Erró el TPI al concluir que el caudal del causante Abraham Jiménez y el caudal de su viuda Nelly Rivera se "confundieron" al fallecer el causante Jiménez el 7 de julio de 2016, dizque dando paso a que el posterior descargo de la viuda en un procedimiento de quiebra incluyera e hiciera incobrable la Sentencia de 2019 contra el caudal del causante Jiménez.

Por su parte, el 26 de octubre de 2025, la parte apelada presentó su *Alegato en Oposición.* Luego de examinar el expediente de autos, y con el beneficio de la comparecencia de las partes, procedemos a expresarnos.

**II**

**A**

Conforme a lo dispuesto en el Artículo 1816 del Código Civil de Puerto Rico de 2020, los derechos a la herencia de quien ha fallecido, con testamento o sin él, antes de entrar en vigor el referido Código, se rigen por la legislación anterior. 31 LPRA sec. 11721. Así, dado a que los hechos de la presente causa acontecieron previo a la aprobación del Código Civil de 2020, el caso de autos se debe disponer al amparo de lo estatuido en el Código Civil de 1930, cuerpo legal vigente al momento de los hechos en controversia.

Es norma reiterada que la sucesión consiste en la transmisión de los derechos y obligaciones del fallecido a sus herederos. 31 LPRA ant. sec. 2081. Sin embargo, en nuestro ordenamiento jurídico no

se hereda de manera automática, sino que, es con la muerte del causante que viene llamado el potencial heredero a aceptar o repudiar la herencia. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 178 (2005); E. González Tejera, *Derecho Sucesorio Puertorriqueño*, Puerto Rico, Ed. Ramallo Bros., Inc., 1983, Vol. 1, págs. 177-178. Es decir que la herencia no se adquiere hasta que el llamado a heredar la acepta. *B.B.V.A. v. Latinoamericana*, 164 DPR 689, 695 (2005); *Rivera Rivera v. Monge Rivera*, 117 DPR 464, 466 (1986); R. E. Ortega-Vélez, *Lo que toda persona debe saber sobre… Donaciones, Herencias y Testamentos*, Ediciones SITUM, 2017, pág. 54. Una vez se lleve a cabo la aceptación o la repudiación de la herencia, los efectos se retrotraerán al momento de la muerte del causante. 31 LPRA ant. sec. 2772.

Específicamente en cuanto a la aceptación, el Código Civil establece que esta será irrevocable, indivisible e incondicional, ya que se trata de un acto libre y voluntario. 31 LPRA ant. secs. 2773 y 2779. De igual forma, la aceptación es un acto delegable a terceros y transmisible por herencia, por lo que, si el heredero muere sin haber aceptado o repudiado la herencia, su derecho a la elección se transmite a sus herederos. 31 LPRA ant. sec. 2788; E. González Tejera, *op. cit.*, pág. 179.

Ahora bien, el Artículo 952 del antiguo Código Civil, 31 LPRA ant. sec. 2780, dispone que la herencia podrá aceptarse de dos (2) maneras: pura y simple, o a beneficio de inventario. La aceptación pura y simple se hará de manera expresa, ya sea mediante documento público o privado. 31 LPRA ant. sec. 2781. Por tanto, para que se considere aceptada la herencia deberá constar por escrito, así como que se desprenda claramente del mismo la voluntad de aceptar. G. Velázquez, *Teoría del Derecho Sucesorio Puertorriqueño*, 2da ed., Hato Rey, Ed. Equity, 1968, pág. 57.

De igual forma, la aceptación pura y simple podrá hacerse de manera tácita, la cual se manifiesta mediante actos que suponen, de manera inequívoca, la voluntad de aceptar. 31 LPRA ant. sec. 2781. Asimismo, se entiende aceptada cuando se llevan a cabo actos que no podrían ser ejecutados legítimamente sino por quien ostente la cualidad de heredero. *Íd.* En específico, el Artículo 954 del aludido Código, 31 LPRA ant. sec. 2782, menciona que las siguientes situaciones implican una aceptación tácita de la herencia:

> (1) Cuando el heredero vende, dona o cede su derecho a un extraño, a todos sus coherederos o a alguno de ellos.
> (2) Cuando el heredero la renuncia, aunque sea gratuitamente, a beneficio de uno o más de sus coherederos.
> (3) Cuando la renuncia por precio a favor de todos sus coherederos indistintamente [...]. *Íd.*

Al aceptar la herencia de manera pura y simple, el heredero será responsable de todas las cargas de la herencia, tanto con los bienes recibidos, como con los suyos. 31 LPRA ant. sec. 2785. En consecuencia, el heredero responderá frente a los acreedores del causante, independientemente de si los bienes provienen del caudal heredado. E. González Tejera, *op. cit.*, pág. 193. Bajo este precepto, se confunden en uno los patrimonios del causante y del heredero, y este tendrá la obligación de satisfacer las deudas del caudal. J. R. Vélez Torres, *Curso de Derecho Civil, Derecho de Sucesiones,* 2da ed. revisada, Facultad de Derecho UIPR, San Juan, 1992, T. IV, Vol. III, pág. 449.

Distinto sería el escenario si el heredero hubiese aceptado la herencia a beneficio de inventario, la cual podrá hacerse ante notario o por escrito ante la sala de Tribunal Superior. 31 LPRA ant. sec. 2802. Ante este cuadro, "quedan separados los patrimonios del causante y el heredero, y este no responde de otras deudas y cargas que las que puedan ser pagadas con los bienes de la herencia". J. R. Vélez Torres, *op. cit,* pág. 449. Es decir que los patrimonios del causante y del heredero no se confunden. G. Velázquez, *op. cit.,* pág.

122. De este modo, la persona llamada a recibir la herencia responde frente a los acreedores del causante únicamente hasta el límite de los bienes heredados, sin que pueda extenderse su responsabilidad más allá de lo recibido. E. González Tejera, *op. cit.*, pág. 195.

Cónsono con lo anterior, surge del Artículo 977 del Código Civil, 31 LPRA ant. sec. 2814, que una aceptación a beneficio de inventario tendrá las siguientes consecuencias:

(1) El heredero no queda obligado a pagar las deudas y demás cargas de la herencia sino hasta donde alcancen los bienes de la misma.
(2) Conserva contra el caudal hereditario todos los derechos y acciones que tuviera contra el difunto.
(3) No se confunden para ningún efecto, en daño del heredero, sus bienes particulares con los que pertenezcan a la herencia.

**B**

Al amparo de la Sección 8 del Artículo I de la Constitución de Estados Unidos, Art. I, Sec. 8, Const. EE. UU., LPRA, Tomo 1, existen los procedimientos de Quiebra, los que, a su vez, están regulados por el Código de Quiebras, 11 USC sec. 101, *et seq. Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 491 (2010). Conforme lo ha expresado nuestro Más Alto Foro, el fin esencial del procedimiento de quiebras es que la persona del deudor "tenga oportunidad de comenzar su vida económica nuevamente, mientras se protegen los intereses de los acreedores, distribuyendo entre éstos los activos del deudor de acuerdo al Código de Quiebra". *Allende Pérez v. García,* 150 DPR 892, 898 (2000); 2 *Collier Bankruptcy Manual,* 3d Ed., 541.01 (1999). En aras de lograr dicho propósito, la Sección 541 del Código Federal de Quiebra, 11 USC sec. 541, dispone que, al comienzo del procedimiento, se crea un "bankruptcy estate", esto es, un caudal en quiebra "consistente de toda la propiedad que estará sujeta a la jurisdicción de la Corte de Quiebra". *Íd.*, págs. 898-899. Para determinar los bienes que

compondrán dicho caudal, se le impone a la persona del deudor la obligación de incluir junto a la petición de quiebra una lista actualizada de sus activos y pasivos, así como sus ingresos y gastos. 11 USC sec. 362(a)(B); *CMI Hospital v. Depto. Salud*, 171 DPR 313, 322 (2007).

Ahora bien, aclaró el Tribunal Supremo que "[l]a responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de éste". *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374, 388 (2020); *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 256 (2012); *Cámara Insular Etc. v. Anadón*, 83 DPR 374, 380 (1961). Así, la ley busca "proteger el ejercicio de cualquier acción que tenga el acreedor contra cualquier otra persona que se hubiese obligado juntamente con el deudor quebrado". *Allied Mgmt. Group v. Oriental Bank,* supra, pág. 388; *Cámara Insular Etc. v. Anadón,* supra, pag. 380.

Salvo escenarios inusuales, "la iniciación del procedimiento de quiebra es una defensa personal que puede invocar el deudor peticionario únicamente, pero que no beneficia a los codeudores". *Peerless Oil v. Hnos. Torres Pérez,* supra, pág. 259; *Cámara Insular Etc. v. Anadón,* supra, pág. 380. Por tanto, la protección que brinda este procedimiento es una exclusiva del deudor que presenta la petición correspondiente. *Allied Mgmt. Group v. Oriental Bank,* supra, pág. 388.

## C

Por otra parte, el estado de derecho actual reconoce que la doctrina de cosa juzgada es una muy provechosa y necesaria para la sana administración de la justicia. *Fonseca et al. v. Hosp. HIMA,* 184 DPR 281, 294 (2012). A través de su aplicación, el ordenamiento jurídico cumple una dualidad de propósitos; mientras

garantiza el interés del Estado de velar porque los litigios culminen definitivamente, de forma tal que se propenda a la certidumbre y seguridad de los derechos declarados por vía judicial, también procura evitar en los ciudadanos las molestias que implica litigar nuevamente una misma causa. *Presidential v. Transcaribe*, 186 DPR 263, 274 (2012); *P.R. Wire Prod. V. C. Crespo & Assoc.,* 175 DPR 139, 151 (2008); *Parrilla v. Rodríguez,* 163 DPR 263, 268 (2004). Así, la referida norma ciertamente versa sobre "lo ya resuelto por fallo firme de un Juez o Tribunal competente y lleva en sí la firmeza de su irrevocabilidad". J.M. Manresa, *Comentarios al Código Civil Español,* 6ta Ed., Madrid, ED. Reus, 1967, T. VIII, Vol. 2, pág. 278.

Un litigante resulta airoso al levantar la defensa de cosa juzgada, siempre que acredite la más idónea concurrencia entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. *Rodríguez Ocasio et al. v. ACAA*, 197 DPR 852, 862 (2017). Respecto a la exigencia de *identidad entre las cosas*, la doctrina interpretativa de la norma reconoce que la misma alude a que se promueva un segundo pleito, cuya esencia versa sobre el mismo asunto del cual se dispuso en uno anterior. Siendo así, el criterio medular a examinarse para determinar si, en efecto, tal aspecto está presente, es el bien jurídico cuya protección o concesión se solicita, ello a la luz de los planteamientos que se generan en torno al mismo. En este contexto, merece especial atención el hecho de si el segundo pronunciamiento judicial, contradice el derecho afirmado en la decisión anterior. *Presidential v. Transcaribe*, 186 DPR 263, 274 (2012); *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212, 219-220 (1989).

En cuanto al requisito de *identidad de causas,* ésta se logra establecer cuando se demuestra que tanto en el primer pleito, como en aquel en el que se levanta la defensa de cosa juzgada, los hechos y fundamentos de las respectivas peticiones son idénticos respecto

a la cuestión planteada. *Presidential v. Transcaribe*, supra, pág. 275. "Al determinar si existe identidad de causas de acción, debemos preguntarnos si ambas reclamaciones se basan en la misma transacción o núcleo de hechos". *Presidential v. Transcaribe,* supra, pág. 275; *Martínez Díaz v. E.L.A.,* 182 DPR 580, 586 (2011).

Por último, relativo al requisito de la *identidad de partes*, la norma ha sido enfática en que el mismo se cumple en cuanto a aquellos que intervienen en el proceso de que trate, a nombre y en interés propio. Lo anterior necesariamente implica que las partes involucradas en ambos procedimientos sean las mismas o se hayan en relación mutua con otra. *Presidential v. Transcaribe*, supra, pág. 276.

De igual forma, nuestro Tribunal Supremo ha establecido que el impedimento colateral por sentencia es una de las modalidades de la doctrina de cosa juzgada. Esta aplica cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia final y firme, y tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén involucradas causas de acción distintas. *MAPFRE et al. v. ELA*, 209 DPR 910, 956-957, (2022); *Coop. Seg. Múlt. V. E.L.A.*, 180 DPR 655, 672-673 (2011); *Suárez v. E.L.A.*, 162 DPR 43, 59 (2004). Esta modalidad se distingue de la cosa juzgada en que no es necesario que se dé el requisito de identidad de causas para su aplicación. *MAPFRE et al. v. ELA*, supra, pág. 957; *Rodríguez Rodríguez v. Colberg Comas*, supra, pág. 221.

Ahora bien, en lo pertinente a la controversia que nos ocupa, nuestro Tribunal Supremo ha expresado que, al enfrentarnos a un dictamen federal, es necesario analizar la controversia bajo la doctrina federal de *res judicata. Comisión v. González Freyre et al.,* supra, pág. 603. En esta*,* se ha reconocido que también existen dos

(2) vertientes: cosa juzgada o *claim preclusion,* e impedimento colateral por sentencia o *issue preclusion.* La primera modalidad requiere que exista entre ambos pleitos "(1) identidad de partes y sus causahabientes, (2) identidad de caudas de acción, y (3) una sentencia que haya adjudicado los méritos de las mismas controversias". *Comisión v. González Freyre et al.,* supra, pág. 605; *Martínez Díaz v. E.L.A.,* supra, pág. 586.

Por otro lado, la modalidad de impedimento colateral por sentencia impide que en un pleito posterior se re litiguen cuestiones de hecho o derecho necesarias para la adjudicación de un pleito anterior, ya sea por la misma causa de acción o por otra distinta, siempre que las partes sean las mismas o sus causahabientes. *Marrero Rosado v. Marrero Rosado,* supra, pág. 497. Para que aplique esta vertiente es necesario que entre ambos pleitos haya identidad de controversia de hechos o derecho, se haya litigado en un pleito anterior, haya una determinación mediante sentencia final, y que esta conclusión haya sido esencial para el fallo. *Íd.*, pág. 497, citando a *Coors Brewing Co. v. Mendez-Torres,* 562 F.3d 3, 8 (1er Cir. 2009); *Martínez Díaz v. E.L.A.,* supra, pág. 587. A modo de ejemplificar, y por estar relacionado a lo que nos ocupa, se ha establecido que "una orden final de una Corte de Quiebras que confirma un plan… se considera como una sentencia de un tribunal federal con efecto *res judicata*". *Marrero Rosado v. Marrero Rosado,* supra, pág. 502.

Como excepción al requisito de identidad de partes que exigen ambas modalidades, se ha reconocido el *nonparty preclusion.* Bajo esta modalidad, la doctrina de *res judicata* federal se extiende a las siguientes situaciones:

> (1)cuando una persona que no fue parte -expresa o implícitamente o mediante su conducta-acepta obligarse a los acuerdos alcanzados por otros que fueron parte en una causa de acción; (2) si existe una relación jurídica sustancial o *privity* entre la persona

obligada y la que fue parte en una sentencia; (3) si una persona que no fue parte estuvo adecuadamente representada por alguien con los mismos intereses y que fue parte en el litigio (pleitos de clase, presentados por fideicomisarios, tutores, fiduciarios); (4) la persona que no fue parte asumió el control sobre el litigio en el cual se dictó sentencia; (5) la persona que fue parte no puede impedir la relitigación a través de otro, es decir, por *proxy*; y (6) la existencia de un esquema estatutario que impide los litigios sucesivos.

*Comisión v. González Freyre et al.,* supra, págs. 607-608.

**D**

Por último, la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 10.2, provee para que una parte interesada solicite al foro competente la desestimación de un pleito incoado en su contra bajo el fundamento de que la reclamación en controversia no justifica la concesión de un remedio.  El referido mecanismo, para que proceda en derecho, presupone que se den por correctos y bien alegados los hechos incluidos en la demanda, así como también exige que los mismos se expongan de forma clara y concluyente, sin que de su faz se desprenda margen alguno a dudas.  *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006); *Pressure Vessels P.R. v. Empire Gas P.R.,* 137 DPR 497, 504-505 (1994).

Las siguientes defensas pueden levantarse mediante una moción al amparo de la Regla 10.2 de Procedimiento Civil, *supra*: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable.

La falta de jurisdicción sobre la materia tiene estas características: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente otorgar al tribunal jurisdicción sobre la

materia, ni puede el tribunal atribuírsela; (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos; (4) los tribunales tienen el deber ineludible de auscultar su propia jurisdicción; (5) los tribunales apelativos deben examinar la jurisdicción del foro del cual proviene el recurso; y (6) un planteamiento de falta de jurisdicción sobre la materia puede hacerse en cualquier etapa del procedimiento, por cualesquiera de las partes o el tribunal *motu proprio. Vázquez v. A.R.P.E.*, 128 DPR 513, 537 (1991).

Ahora bien, nuestro estado de derecho reconoce e impulsa el interés de que todo litigante tenga su día en corte. *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 121 (1992). El empleo de los recursos adjudicativos en nuestra jurisdicción se fundamenta en la política judicial que establece que los casos se ventilen en sus méritos de forma rápida, justa y económica. *Amaro González v. First Fed. Savs.*, 132 DPR 1042, 1052 (1993). Considerando eso, la posición doctrinaria en nuestro sistema de ley es salvaguardar, como norma general, el derecho de las partes a su efectivo acceso a los tribunales. *Imp. Vilca, Inc. v. Hogares Creas Inc.*, 118 DPR 679, 686-687 (1987). En consecuencia, la desestimación de un pleito, previo a entrar a considerar los argumentos que en el mismo se plantean, constituye el último recurso al cual se debe acudir, luego de que otros mecanismos resulten ser ineficaces en el orden de administrar la justicia. *SLG Sierra v. Rodríguez*, 163 DPR 738, 746 (2005).

En atención a la política pública antes expuesta, para que el referido mecanismo de desestimación proceda en derecho, presupone que se den por correctos y bien alegados los hechos incluidos en la demanda, así como que los mismos se expongan de forma clara y concluyente, sin que de su faz se desprenda margen alguno a dudas. *Díaz Vázquez et al. v. Colón Peña et al.,* 214 DPR 1135, 1149 (2024); *Blassino, Reyes v. Reyes Blassino et al.*, 214 DPR

823, 833 (2024); *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523, 533 (2024); *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería*, 167 DPR 625, 649 (2006); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 504-505 (1994).  De igual forma, la demanda deberá ser interpretada con mayor liberalidad a favor de las alegaciones de la parte demandante, por lo que, recayendo la carga probatoria en el promovente de la moción de desestimación, este viene obligado a demostrar que aquel no tiene derecho a remedio alguno al amparo de los hechos que puedan ser probados en apoyo a su requerimiento. *Inmob. Baleares et al. v. Benabe et al.,* 214 DPR 1109, 1128-1129 (2024); *Dorante v. Wrangler of PR*, 145 DPR 408, 414 (1998).  En este supuesto, la función judicial estriba en determinar si, aun resolviendo toda incertidumbre en beneficio de la parte demandante, su demanda es suficiente para constituir una reclamación válida.  *Blassino Alvarado et al. v. Reyes Blassino et al.*, supra, pág. 833-834; *Pressure Vessels PR v. Empire Gas PR*, supra, pág. 505.

**III**

En el caso ante nos, la parte apelante alegó que el Tribunal de Primera Instancia erró al desestimar su causa de acción, a pesar de que de la *Demanda* surgían hechos que justificaban la misma. Además, adujo que el Foro de Instancia incidió al concluir que el caudal del señor Jiménez Rivera se confundió con el patrimonio de la señora Rivera Cano cuando esta recibió el descargo en el procedimiento de quiebra. Habiendo examinado los referidos planteamientos a la luz de las particularidades del caso, así como el derecho aplicable a la controversia de autos, procedemos a revocar la *Sentencia* apelada.

En primer lugar, surge del dictamen apelado que el Foro Primario desestimó la *Demanda* bajo el fundamento de que carecía

de jurisdicción para atender la materia, ya que razonó que era de aplicación la doctrina federal de *res judicata* en su modalidad impedimento colateral por sentencia, bajo la excepción del *nonparty preclusion.* No obstante, justipreciamos que se equivocó el Foro apelado en su razonamiento.

Conforme al derecho anteriormente esbozado, esta doctrina requiere que haya identidad de controversia de hechos o derecho, haya una determinación mediante sentencia final y que dicha conclusión haya sido esencial para el fallo. En el caso ante nos, la controversia gira en torno a si el caudal del señor Jiménez Rivera formó parte del patrimonio de la señora Rivera Cano al presentar la petición de quiebra ante el Foro Federal. Es decir que no se trata de emitir un fallo que contradiga o que interfiera con la orden de descargo que emitió la Corte de Quiebras. Por tanto, la doctrina de *res judicata* no es de aplicación al caso de epígrafe. El deber del Foro Primario era dilucidar si, al momento de solicitar la quiebra, el caudal del señor Jiménez Rivera había sido heredado en su totalidad por la señora Rivera Cano, y, por consiguiente, si la deuda reclamada por la parte apelante se descargó por la Corte de Quiebras.

Tal cual detallado en el resumen doctrinal, previo a desestimar una causa de acción al amparo de la Regla 10.2 de las de Procedimiento Civil, *supra*, el Foro Primario debe tomar como ciertos los hechos bien alegados en la demanda, y no debe existir duda sobre que la reclamación de la parte no justifica la concesión de un remedio.

En el presente caso, la parte apelante arguyó que tiene derecho a cobrar la deuda producto de la *Sentencia* emitida a su favor el 1 de noviembre de 2019, al sostener que el descargo de la Corte de Quiebras cobijó únicamente el patrimonio de la señora Rivera Cano. Asimismo, planteó que en la *Sentencia* emitida el 1 de

noviembre de 2019, en el caso civil número K AC20044764, surge que los bienes que pertenecían al caudal del señor Jiménez Rivera podían ser objeto de cobro, no así el patrimonio de la señora Rivera Cano, por esta haberse acogido al procedimiento de quiebra.

Por otro lado, la parte apelada arguyó que, al repudiar la herencia del señor Jiménez Rivera, la señora Rivera Cano se convirtió en la única y universal heredera, y, consecuentemente, hubo una confusión de caudales, por lo que la deuda reclamada por la parte apelante formó parte del descargo.

Tal cual previamente expuesto, la protección que brinda un procedimiento de quiebra es una defensa personal exclusiva para el deudor que presenta la petición correspondiente. Por tanto, como norma general, el hecho de que un deudor se acoja a un procedimiento de esta naturaleza no altera la responsabilidad de un codeudor frente a su acreedor. En el caso que nos ocupa, a pesar de que, tanto el señor Jiménez Rivera, como la señora Rivera Cano, eran codeudores de la parte apelante, existe controversia sobre si, al presentar la petición de quiebra, la señora Rivera Cano había heredado las deudas del señor Jiménez Rivera.

Según el derecho anteriormente discutido, en nuestro ordenamiento jurídico no se hereda automáticamente. Es decir que, con su fallecimiento, se abre la sucesión y vienen llamados los potenciales herederos a decidir si aceptarán o repudiarán la herencia del causante. De igual forma, la aceptación es transmisible, por lo que, de morir previo a su ejecución, el mismo se transmitirá a sus herederos. Por igual, existen distintos tipos de aceptación, los cuales tendrán consecuencias diferentes. Entiéndase, si se acepta de forma pura y simple, el efecto sería que el caudal del causante se confunde con el del heredero, así como que lo haría responsable de las cargas de este. No así si se acepta a beneficio de inventario, lo

cual lo haría responsable de las deudas, y, en consecuencia, no respondería por las cargas con sus propios bienes.

Del expediente del presente caso, surge que existe controversia sobre si hubo una confusión de caudales al momento en que la Corte de Quiebras descargó las deudas de la señora Rivera Cano. No emana de los documentos que obran en autos que se haya presentado prueba ante el Tribunal de Primera Instancia que demostrara que la señora Rivera Cano aceptó la herencia del señor Jiménez Rivera, y, de ser así, bajo qué modalidad lo hizo. Lo anterior cobra mayor importancia cuando pudiese incidir sobre si la deuda reclamada por la parte apelante se incluyó en las que fueron descargadas por la Corte de Quiebras, o, por el contrario, si la misma nunca se integró al patrimonio de la señora Rivera Cano, permaneciendo así el crédito en controversia.

Por esta razón, es nuestra apreciación que los reclamos de la parte apelante requieren la celebración de una vista evidenciaria, en la cual ambas partes puedan demostrar si efectivamente la señora Rivera Cano aceptó la herencia del señor Jiménez Rivera, y la extensión de dicha aceptación. De este modo, el Foro de Primera Instancia podrá pasar juicio sobre el asunto en controversia.  Es meritorio resaltar que en este caso únicamente se celebró una vista argumentativa, y, por consiguiente, las partes no han presentado prueba alguna sobre la aceptación de la herencia.

En fin, concluimos que el Foro de Instancia cometió los errores señalados por la parte apelante y revocamos la *Sentencia* apelada.  Debido a que hay controversias de hechos que requieren la presentación de la prueba correspondiente por las partes, coincidimos en que procede devolver el caso al Tribunal de Primera Instancia para que se continúen los procedimientos, conforme a lo aquí dispuesto.

## IV

Por los fundamentos antes expuestos, revocamos la *Sentencia* apelada y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, conforme a lo aquí dispuesto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones